No. 38,693

In the Matter of the Estate of Mabel Cipra, Deceased. Re: Demand of Irma Stahn. EMIL RASMUSSEN, Administrator, *Appellant*, v. IRMA STAHN, *Appellee.*

(246 P. 2d 264)

Opinion filed July 3, 1952.

*Theodore M. Metz,* of Lincoln, argued the cause and was on the briefs for the appellant.

*Philip Lewis,* of Topeka, argued the cause, *Thomas M. Lillard,* of Topeka; *J. J. McCurdy* and *W. W. Urban,* both of Lincoln; *Doris Dixon Stowell* and *William H. Stowell,* both of Phillipsburg, were with him on the briefs for the appellee; *Thomas Lillard, O. B. Eidson, Philip Lewis* and *James Porter,* all of Topeka, of counsel.

The opinion of the court was delivered by

SMITH, J.: This was a claim in probate court against an estate. It was certified to the district court. There the administrator of the estate demurred to it. This demurrer was overruled. Hence this appeal.

The controversy arises out of the will of Wenslow Cipra, whose estate was wound up and the executrix discharged about ten years before the death of his widow. He left surviving him his widow, Mabel Cipra, and two daughters by a former wife, Irma Stahn, the claimant in this case, and Alice Choate, about whose claim against the estate of Mabel Cipra an appeal was argued the same day as this one.

In his will Wenslow gave Irma $2,000 in cash and certain described real estate. He gave Alice his newspaper and $500 in cash. His will then contained a clause as follows:

"I aim to provide for the safety and comfort of my beloved wife, Mabel Cipra, during her life time so all the remainder of my property, consisting of money in bank, real estate loans, bank stock in Saline Valley Bank of Lincoln, Kansas, and all other property and otherwise mentioned or disposed of in this will, I bequeath to my said wife to be hers for her use and comfort during her life time and after that if there is anything left the remainder should be divided equally between the two daughters mentioned above in this will. I also appoint my said wife executrix of this will and request, that she be required to give NO bond."

The claim in this case first alleged the death of Wenslow about January 24, 1939; that his will was admitted to probate and a copy of the will was attached. The claim then alleged that after the specific bequests to his daughters it was the intention of Wenslow to give a life estate to Mabel and a remainder interest to vest equally in Irma and Alice; that on January 31, 1939, in Wenslow's estate Mabel filed election to take under the will; that on April 30, 1940, Mabel, as executrix of Wenslow's estate, filed her report of distribution showing a distribution to herself as an individual of $18,-493.40; that the payment was made pursuant to the journal entry of final settlement.

This order was included in the claim. It first found the heirs to be Mabel Cipra, widow, and Irma Stahn and Alice Choate, daughters; that all taxes had been paid; that there was in the hands of the executor $18,493.40 and it is by the court ordered that the same be paid to the following named persons in the sums opposite their names: Mabel Cipra, the surviving spouse $18,493.40.

The order then stated of what items that amount consisted and then continued:

"And it is by the court ordered that Mabel Cipra, as Executrix of said estate, assign and deliver to said Mabel Cipra, surviving spouse, all of said personal property, securities and cash, and that said Mabel Cipra, executrix, take receipt for said sums and file the same in this court, and that thereupon the said Mabel Cipra, executrix, be discharged as such executrix of said estate.

". . . And the Court does assign to Mabel Cipra, surviving spouse, the East Twenty-five feet of Lot Three in Block Twenty-six in the City of Lincoln Center, Lincoln County, Kansas."

The claim then alleged that the probate court did not in the final decree set forth with particularity the extent and the nature of the title each legatee acquired under the last will of Wenslow; that

$18,493.40 and the land described were under the terms of the will bequeathed as a life estate to Mabel, who enjoyed them during her lifetime, and Irma Stahn and Alice Choate had a vested remainder in such property; that the personal property received by Mabel from Wenslow's estate consisting of cash, mortgages and a Buick car were for the period of Mabel's lifetime in her possession; that it was not necessary for Mabel to consume any portion of the principal of the life estate bequeathed her for her support; that she for the consideration of $500 paid her did convey the real estate; that on August 4, 1950, Mabel died in possession of the personal property bequeathed and the funds from the sale of the real property, such property being in the form of United States bonds, real estate, mortgages, bank deposits and household goods; that about September 11, 1950, the administrator of Mabel's estate inventoried to her estate without the consent of Irma all the remainder interest of Irma's to her sister; that the value of the property was in the sum of $19,144.35, of which Alice was the owner of one-half and her sister the owner of the other half.

The prayer was that the court construe the will of Wenslow and enter an order allowing Irma's petition for one-half the remainder after the life estate of Mabel; that the court enter its order that such remainder interest has been inventoried to the estate of Mabel and the court order the administration to pay over to Irma one-half of such property.

To this demand the administrator filed an answer stating that the petition did not state facts sufficient to constitute a legal demand against the estate of Mabel; that the petition showed on its face the property claimed was assigned to Mabel and there was no allegation that the property or any interest in it was ever assigned to the claimant; that all the property claimed was by the probate court in the estate of Wenslow assigned to Mabel. The answer denied that Irma had any interest in it. The claim and answer were in due time certified to the district court. In that court the administrator renewed his demurrer. It was overruled—hence this appeal.

The administrator points out that all the property left in the estate of Wenslow Cipra after the specific bequests were paid was assigned to Mabel Cipra in the administration of the Wenslow Cipra estate; that no appeal was taken from such order and it became final long before Mabel's death. He then argues that Irma's claim is a collateral attack on a judgment of the probate court which has

become final. The authorities he relies on are those where we have upheld the finality of such an order of a probate court. We cannot now question that rule. It is not in point here. Rather than stating that the claim is a collateral attack on the order of final distribution in the Wenslow Cipra estate it would be more nearly correct to say it is an effort to secure an interpretation or clarification of such an order. To do so we must examine Wenslow's will, upon which the order was based, the terms of which Mabel elected to accept and the pertinent statutes, as well as the order itself. It is worth noting that the order simply directed Mabel, the executrix, to deliver the property to Mabel, the individual. There were no words such as "to be her property absolutely" or a similar term such as we frequently find in such orders. Then the will itself stated first that Wenslow aimed to provide for his wife during her lifetime. It gave her the property for her use and comfort during her lifetime. The next clause was "and after that if there is anything left the remainder should be divided equally between the two daughters." Such is the will the court was considering when it made the order of final distribution in Wenslow's estate.

G. S. 1949, 59-2249, provides as follows:

"Hearing and final decree. . . . the court shall determine the heirs, devisees, and legatees entitled to the estate and assign the same to them by its decree. The decree shall name the heirs, devisees, and legatees, describe the property, and state the proportion or part thereof to which each is entitled. Said decree shall be binding as to all the estate of the decedent, whether specifically described in the proceedings or not."

The final order of distribution did follow this section. There is another which is pertinent in this appeal. G. S. 1949, 59-1506, provides as follows:

"When by will the use or income of personal property is given to a person for a term of years or for life, and another person has an interest in such property as remainderman, the court, unless the will provides otherwise, may order such property to be delivered to the person having the limited estate, or to be held by the executor or some other person as trustee for the benefit of the person having the limited estate. Bond may be required of the person to whom the property is delivered or by whom it is held, in the first instance or at any time prior to the termination of the limited estate."

It will be noted that the probate court in the Wenslow Cipra estate could have ordered the property in question held by the executor or some other person as trustee for the benefit of Mabel. It also had

the power since there was nothing in the will to provide otherwise to order the property to be delivered to Mabel since she was the person having the limited estate. Such is the order the court saw fit to make. It is entirely consistent with the terms of Wenslow's will. The present claim does not ask us to strike down or set aside any order in the Wenslow Cipra estate. It only asks us to state whether the order was not made pursuant to the provisions of G. S. 1949, 59-1506. We hold it was so made.

The judgment of the trial court is affirmed.