No. 40,077

In the Matter of the Estate of S. P. Burling, deceased. (Robert Burling, *Appellant,* v. W. W. Burling, *Appellee.*)

(298 P. 2d 290)

Opinion filed June 9, 1956.

*Abraham Weinlood, Bill R. Cole, Kenneth F. Ehling, D. Stewart Oswalt* and *John H. Shaffer,* all of Hutchinson, were on the briefs for appellant.

*Walter F. Jones, J. Richards Hunter, Harry H. Dunn* and *William B. Swearer,* all of Hutchinson, were on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: This is an appeal from a judgment setting aside an order of the probate court of Reno County, which order vacated and set aside its previous order appointing a trustee of property held in life tenancy; and, reinstating, with modifications, the trust originally ordered established.

On June 29, 1946, S. P. Burling and Emma E. Burling, his wife, entered into a written contract between themselves and with their six children: two sons, W. W. Burling and Robert Burling, and four daughters, Emma Stickley, Mattie Reed, Clara Belle Haworth and Tiny Burling, whereby they agreed to give each child a quarter section of land and not to make a will or otherwise dispose of their property so as to deprive any of their children of an equal share upon the death of the survivor. The contract further provided that upon the death of either parent, the survivor would have the use and income of all of the decedent's property until the death of the survivor; that, "If the income from such property be insufficient at any time to provide a comfortable living for the survivor, such survivor shall have the right and privilege of using so much of the principal thereof as may be necessary to provide a comfortable living for herself or himself, as the case may be, in a manner fitting to their station in life." Each child agreed not to make any claim or demand upon the estate of the decedent until after the death of the survivor, and at that time each of the children would share equally in the estate. Subsequently, and in conformity with the contract, S. P. Burling and Emma E. Burling executed and delivered proper deeds conveying to each child a quarter section of land.

S. P. Burling died testate March 12, 1952, survived by his wife and

their six children. The decedent's will was admitted to probate May 5, 1952. So far as here pertinent the instrument reads:

"After the payment of my debts and costs of administration I give, devise, and bequeath to my wife, EMMA E. BURLING, all the property of which I may die seized or possessed, to have and hold during the term of her natural life, and upon her death to my children: W. W. BURLING, EMMA STICKLEY, MATTIE REED, ROBERT BURLING, CLARA BELLE HAWORTH, and TINY BURLING, share and share alike, all in accordance with the provisions of the contract heretofore made by myself, wife, and our children, dated the 29th day of June, 1946."

The testator appointed his son, W. W. Burling, to act as executor, who qualified as such, and the estate was administered.

On December 16, 1953, pursuant to petition for final settlement, notice and hearing, the estate of the decedent was fully settled and the property ordered distributed to the devisees in accordance with the terms of his will. The journal entry of final settlement provided, among other things, that the real estate,

". . . is hereby assigned to the life tenant, Emma E. Burling, for the term of her natural life, for her use, and the remainder interest in said real estate is hereby assigned in fee simple to: W. W. Burling, Emma Stickley, Mattie Reed, Robert Burling, Clara Belle Haworth and Tiny Burling, share and share alike, in accordance with the terms of the Will of S. P. Burling, deceased."

With respect to the personal property of the decedent's estate, consisting largely of United States government bonds, bank and elevator stocks, one promissory note, savings and checking accounts, and wheat and cattle, the journal entry of final settlement provided:

". . . that all the personal property, above described, of which the decedent died seized and possessed, be and the same is hereby assigned to the said life tenant, Emma E. Burling, for the term of her natural life, and the remainder interest in said personal property is hereby assigned to: W. W. Burling, Emma Stickley, Mattie Reed, Robert Burling, Clara Belle Haworth and Tiny Burling, share and share alike, in accordance with the terms of the Will of the decedent."

The journal entry of final settlement lastly provided:

". . . that, upon the filing of receipts showing the payments and distribution above provided for, & payt [sic] of court costs the said W. W. Burling shall be finally discharged as Executor of the Will of S. P. Burling, deceased."

On April 27, 1954, the probate court made a further order by an instrument entitled "Order Discharging Executor." It recited that

the executor, having complied with the orders and decrees of the court, and with the provisions of the law, was entitled to be discharged. The second paragraph of the Order "finally discharged" the executor and his surety. The final paragraph of the Order reads:

"IT IS FURTHER ORDERED BY THE COURT that W. W. Burling continue to hold and administer IN TRUST the personal property devised by S. P. Burling with a life estate to his widow, Emma E. Burling, and the income from the farm properties also devised to her with a life estate. It shall be the duty of the Trustee to place the cash he receives from the estate belonging to Emma E. Burling as a life estate, in a savings account in some bank properly insured and pay the proceeds thereof to Emma E. Burling as long as she may live. He shall also collect the income from farm properties devised to Emma E. Burling for life, pay the taxes thereon, necessary repairs and the net income to Emma E. Burling. He shall make an annual accounting of the money, notes, accounts, rents, bonds and profits from the land. He shall not sell or dispose of the United States Government bonds belonging to the estate. His administration of all of this propertly shall be under the control of this Court and he shall give bond in the sum of $19,000.00."

Following the discovery of the order creating the purported trust Robert Burling filed a petition in the probate court in which he alleged that on December 16, 1953, final settlement was had following notice to all interested parties and that by the decree of final settlement the will of the decedent and the contract of June 29, 1946, referred to in the will of the decedent, were given effect by assigning all of the real and personal property of the decedent to Emma E. Burling as life tenant with remainder after her death in all of the real and personal property to the six children of decedent, share and share alike, in accordance with the terms of the will and the contract; that the order of April 27, 1954, and the trust purportedly created thereby was without application by any person, and particularly the life tenant, or without notice to petitioner or to any other interested party of the estate except the named trustee himself, or without a hearing actually being held; that none of the proceedings prior to the Order Discharging Executor made mention of any trust purportedly created and set up by said order; that the journal entry of final settlement made no mention of such a trust; that petitioner relied upon the journal entry of final settlement as a full, complete and final settlement of the estate and the assignment of its property; that petitioner had no notice or knowledge of the purported trust apparently set up by the Order Discharging Executor until October 7, 1954, and then only by accident as a result of checking the files for in-

formation concerning the decree of final settlement; that the order of April 27, 1954, was void for lack of jurisdiction; and, further, that the probate court lacked power to create the purported trust. The prayer was that the probate court vacate and set aside that part of the Order Discharging Executor purporting to create a trust of all the property devised and assigned to Emma E. Burling; that the trustee be required to account for all of said property, and that it be restored to the life tenant.

Notice of the hearing of this petition was given to all interested parties. W. W. Burling filed an answer in which he alleged the petition was not made by the proper party in interest, and that petitioner had no interest whatsoeever in the matter involved.

On December 3, 1954, a hearing was had upon the petition and answer. The probate court set aside all of that portion of the Order Discharging Executor purporting to create or set up a trust of all of the property of the estate. W. W. Burling appealed to the district court, and on May 12, 1955, the appeal was heard. On June 16, 1955, the district court filed a written memorandum opinion finding that the Order Discharging Executor should be modified by vacating that part thereof which directed the income from the real estate to be held in trust but that otherwise the probate court had jurisdiction to create the trust; that the remainder of the Order Discharging Executor placing the personal property in trust should be sustained, and the trust and the trustee be subject to the supervision and control of the probate court, and that the Order Discharging Executor did not authorize the sale of any of the trust property. From this judgment Robert Burling has appealed.

For the purpose of this opinion Robert Burling will be referred to as appellant and W. W. Burling as appellee.

As preliminary, we note it is not alleged, nor contended, that appellee was untrustworthy or unfit to be entrusted with the management and control of the personal property devised and assigned to Emma E. Burling or that the interest of the remaindermen would be jeopardized by his appointment. The integrity of the trustee or his ability to handle the trust funds are not questioned. Likewise, it is not contended, nor was evidence offered at the time of the final settlement of decedent's estate or at any other time, that Emma E. Burling was unfit or unwilling to have possession and control of the property devised and assigned to her for her natural

life; that she would dissipate the estate to the injury of the remaindermen; that she should give bond to preserve the estate and thus protect the remaindermen or that the personal property be assigned and delivered to her as trustee for the use and benefit of herself and the remaindermen.

We further note that pursuant to the provisions of the contract of June 29, 1946, incorporated by reference in the decedent's will, Emma E. Burling, as survivor, was entitled to all of the income from the property of the decedent during her lifetime, and if it was insufficient to provide her with a comfortable living, she had the right and privilege of using so much of the principal of the estate as might be necessary to provide her a comfortable living in a manner fitting to her station in life. Mention is made of the provisions of the contract and of the will only for the reason that it might be contended they vested in Emma E. Burling a life estate with power of disposal and therefore make the provisions of G. S. 1949, 59-1506 inoperative with respect thereto, but in view of our conclusion hereinafter set forth, it is unnecessary to determine whether this is the result. We further note that the journal entry of final settlement, with respect to the assignment of property to the life tenant and to the remandermen, did not make provision for the use of the principal of the estate as might be necessary to provide Emma E. Burling a comfortable living in a manner fitting to her station in life in the event the income of the property did not do so. However, the time for the life tenant to appeal from the order of final settlement in this respect has long since expired. (G. S. 1949, 59-2213.)

There is no dispute of the facts in this appeal, and unless the order of the probate court of April 27, 1954, may be attacked collaterally by appellant he is not entitled to have his petition sustained. The briefs of both parties state that one question is presented: Did the probate court lack power to appoint a trustee of the property assigned to the life tenant on December 16, 1954, when the executor appeared in court on April 27, 1954—132 days later—to file his receipts of sums ordered disbursed on final settlement and receive his final discharge? The answer to this question requires an examination of pertinent provisions of our probate code. G. S. 1949, 59-1506, reads:

"When by will the use or income of personal property is given to a person for a term of years or for life, and another person has an interest in such property as remainderman, the court, unless the will provides otherwise, may

order such property to be delivered to the person having the limited estate, or to be held by the executor or some other person as trustee for the benefit of the person having the limited estate. Bond may be required of the person to whom the property is delivered or by whom it is held, in the first instance or at any time prior to the termination of the limited estate."

This is a new section in the Kansas probate code. The legislature, having in mind the possibility of waste, extravagance, loss of securities or other dissipation of assets by a person having a limited estate in personal property, enacted the statute as a protection of the interest of the remainderman. It empowers probate courts to deliver such property, unless the will provides otherwise, to a person entitled to it for a term of years or life, or permits it to be held by the executor or some other person as trustee, for the benefit of the person having the limited estate. If the property is ordered delivered to the person having the limited estate, the probate court may require such person to give bond at the time the property is ordered delivered or at any time prior to termination of the limited estate. Likewise, if the property is ordered held by a trustee, bond may be required of the trustee in the first instance, or at any time prior to the termination of the limited estate. Prior to the adoption of this statute, this court held that when a provision in a will creates a life estate with remainder over, the life tenant is entitled to use only the income from the property devised and assigned, and the probate court may require the life tenant to give security to account for funds to the remainderman. (*Blakely v. Blakely,* 115 Kan. 644, 224 Pac. 65; *Diller v. Kilgore,* 135 Kan. 200, 9 P. 2d 643.)

Ordinarily, the life tenant is not obliged to give security for the protection of the remainderman, particularly if he has power to dispose of or consume the property and does not act in bad faith. (31 C. J. S. Estates, § 59, p. 76; 33 Am. Jur., Life Estates, § 225, p. 711.) Where a statute authorizes the probate court to order the property delivered to the person having the limited estate, or to be held by the executor or some other person as trustee, the statute may only be applied when the court has power to make and control orders pertaining to the estate. In the case of *In re Estate of Cipra,* 173 Kan. 330, 246 P. 2d 264, this court recognized the authority of the probate court to require that personal property be placed with a trustee, but the decision furnishes no guide or precedent as to when or in what manner the statute may be invoked.

Did the probate court have power to appoint appellee trustee

on April 27, 1954? We think it did not. The order appointing appellee trustee of the property assigned to Emma E. Burling for her use during her lifetime was void at its inception.

Our statute G. S. 1949, 59-2213 reads:

"No judgment or decree shall be rendered in a probate proceeding without proof. The court shall have control of its orders, judgments, and decrees for thirty days after the date of the rendition thereof. Thereafter such orders, judgments, and decrees may be vacated or modified as provided by section 605 of the code of civil procedure."

The judgment of final settlement of December 16, 1953, assigned the real and personal property to the widow, without qualification, with remainder to the six children. No provision was made for the control of this property by a trustee pursuant to G. S. 1949, 59-1506. All of the parties interested in the estate were present in court and were bound by this decree unless it was vacated, modified or set aside. For 30 days the probate court had control of this decree (G. S. 1949, 59-2213), and within this time an appeal could have been taken by any person aggrieved. (G. S. 1949, 59-2404.) Thereafter, and on January 16, 1954, the probate court lost control of its judgment of final settlement, and the assignment of the estate's property there made could not be vacated or modified except for fraud or other cases provided in the code of civil procedure (G. S. 1949, 59-2213), and then only upon motion and notice as provided in G. S. 1949, 60-3007 to 60-3015, inclusive, and except for a void judgment or decree which may be vacated at any time on motion by any person affected thereby. (G. S. 1949, 60-3009.)

It is the fundamental rule of this court that where a court has jurisdiction of the parties to an action and of the subject matter thereof and renders a judgment within its competency, the judgment is final and conclusive unless corrected or modified on appeal, or by such other method as may be prescribed by statute and it cannot be attacked collaterally otherwise. (*Rennolds v. Guthrie*, 103 Kan. 829, 177 Pac. 359; *Union Central Life Ins. Co. v. Pletcher*, 144 Kan. 359, 58 P. 2d 1158; *Smith v. Power*, 155 Kan. 612, 127 P. 2d 452; *Middendorf v. Kansas Power & Light Co.*, 166 Kan. 610, 203 P. 2d 156; *In re Estate of Rothrock*, 173 Kan. 717, 252 P. 2d 598; *Farmer v. Farmer*, 177 Kan. 657, 281 P. 2d 1075.) Before these cases were decided, this court said in *Lewis v. Woodrum*, 76 Kan. 384, 92 Pac. 306:

"Due notice of a proposed final settlement of an estate having been given,

the probate court has jurisdiction to make the settlement, apportion the residue of the estate among those entitled to share in it, and to order distribution.

"Such order is binding and conclusive upon all having notice of the proceeding, unless vacated or set aside upon the grounds and by the methods prescribed by statute." (Syl. ¶¶ 1 and 2.)

The above case was followed and quoted in *In re Estate of Rothrock*, supra, and *Cessna v. Carroll*, 178 Kan. 650, 657, 290 P. 2d 803. Other cases of like purport are *Musick v. Beebe, Adm'r*, 17 Kan. 47; *Proctor v. Dicklow*, 57 Kan. 119, 45 Pac. 86; *Brown v. Schreckler*, 151 Kan. 724, 100 P. 2d 471, and *Bindley v. Mitchell*, 170 Kan. 653, 228 P. 2d 689.

After the probate court lost control of its judgment of final settlement, the only order it could further make was to finally discharge the executor upon his filing receipts for sums of money ordered disbursed by the journal entry of final settlement (and this was expressly provided for in that order), or to require the life tenant to give bond (G. S. 1949, 59-1506, 59-1718, 59-2249). The fact that the executor delayed in filing such receipts until April 27, 1954, did not prevent the judgment of final settlement from becoming final and absolute. Thereafter, the probate court had control of the executor for one purpose only, *i. e.*, to finally discharge him when he filed his receipts. Its power to make further orders concerning the disposition, delivery or assignment of the estate's property, or to appoint a trustee for the benefit of the life tenant, whether under the provisions of G. S. 1949, 59-1506, or otherwise, had terminated. The estate had been fully administered. Its property had been assigned in accordance with the will of the testator. The judgment of final settlement had become final and absolute. Nothing further remained to be done on April 27, 1954, but for the executor to file his receipts and receive his discharge. Clearly, the probate court did not have power to create the purported trust and appoint the trustee on that date. This is a power to be exercised by the probate court on or before the final settlement of the estate and cannot be exercised thereafter. The attempt to do so is clearly a modification of the judgment of final settlement and a complete departure therefrom. The order being void, the appellant was entitled to maintain his petition; to have that part of the order purporting to create the trust and appoint a trustee set aside; to have the trustee discharged; and, the property restored to the life tenant.

The judgment of the district court of June 16, 1955, is reversed

with directions to set aside the judgment, and the cause is remanded with instructions to the district court to approve the order of the probate court of December 3, 1954, and to certify its order to the probate court.