No. 40,899

PHILIP FREDRICH BAUMANN, *Appellee,* v. RALPH MICHAEL BAUMANN, EDNA MARGURETTE PANTER, F. G. MEIERHOFF and JOHN PANTER, *Appellants.*

No. 40,900

PEARL THELMA SMITH, *Appellee,* v. RALPH MICHAEL BAUMANN, EDNA MARGURETTE PANTER, F. G. MEIERHOFF and JOHN PANTER, *Appellants.*

No. 40,901

CLARA MAE MARRAN, *Appellee,* v. RALPH MICHAEL BAUMANN, EDNA MARGURETTE PANTER, F. G. MEIERHOFF and JOHN PANTER, *Appellants.*

(326 P. 2d 270)

 Opinion filed June 7, 1958. 

*Don W. Noah,* of Beloit, argued the cause, and *Arno Windscheffel,* of Smith Center, and *Ralph H. Noah,* of Beloit, were with him on the briefs for the appellants.

*Geo. E. Teeple,* of Mankato, was on the briefs for the appellees.

The opinion of the court was delivered by

PRICE, J.: These consolidated appeals are by coexecutors and the sureties on their bond from orders overruling their demurrers to petitions in actions brought against them for recovery of money. The question is the same in each case, and our decision applies to each of the appeals.

The facts are simple.

On a date not given, Michael Baumann, a resident of Smith County, died testate. He was survived by four sons—George, Philip, Ralph and Karl, and four daughters—Ann, Pearl, Clara and Edna. Ralph and Edna were named as executors of the will, and letters testamentary were issued to them on January 3, 1955. They gave

bond in the amount of $17,500 with the other two defendant-appellants, Meierhoff and Panter, as sureties therein.

The testator owned real estate, cash and other personal property. His will contained specific devises of the real estate to the four sons, and further provides:

"It is further provided that all of the above described real estate shall be appraised by three disinterested men, to be appointed by the Probate Court admitting this will to probate, and the price agreed upon by them shall for the purposes of this will be final.

"In order to equalize the gifts to each of my children, I require that should any of the land herein given to my sons above set out, be of greater value than the total divided by four, then that son receiving such greater amount shall be required to pay the executors hereof an amount sufficient to make the gifts equal. In case any of the gifts above made shall be less than one fourth of the total appraised value, then that son receiving real estate of such lesser value shall receive the difference in cash.

"THIRD: To each of my daughters, Anna Bell Norton, Pearl Thelma Smith, Clara Mae Marran and Edna Margurette Panter, I give an amount in cash equal to one fourth of the appraised value of all my real estate hereinbefore described. In case there should not be sufficient cash in my said estate to pay this cash amount as set out in this paragraph, then I direct that my sons receiving real estate shall pay enough cash into the hands of my executors to insure that each of my said daughters shall receive an equal share in value with my said sons."

The estate was fully administered, except as hereafter mentioned, and final settlement was made on June 16, 1956. It discloses that George and Karl each received real estate in excess of the value to which, under the "pattern" of the will, each was entitled, and the journal entry of final settlement recites that George and Karl owe the executors the sums of $4,869.85 and $3,939.07, respectively, and that *upon* payment by them of such sums to the executors the real estate devised to them is to be assigned to them in accordance with the terms of the will, and that *after* the payments by George and Karl to the executors they, the executors, are to distribute certain sums in cash (the amounts of which are not in dispute) to the six other brothers and sisters, to the end that in the final "wind-up" of the estate each of the eight children is to share equally. The journal entry of final settlement further provides that *upon* the executors filing receipts showing the foregoing distribution they are to be finally discharged.

It developed, however, that George and Karl did not pay over the respective amounts owed by them to the executors. (We are

told in the briefs that payment still has not been made.) In August and October, 1956, Philip, Pearl and Clara filed separate actions in the district court against the executors and the sureties on their bond to recover the respective amounts due them under the final settlement. The gist of each petition is that by the terms and provisions of the order of final settlement in the probate court the executors were charged with the duty of collecting and paying over to plaintiff his or her distributive share in a stated amount; that the executors have wholly failed and refused to carry out the mandate of the order of final settlement; have failed and refused to pay to plaintiff the amount of his or her distributive share; that the executors have failed to faithfully discharge the duties of their trust, and that by reason thereof the condition of their bond has been breached, and the prayer seeks recovery in a stated amount.

Defendant executors and their sureties demurred to each petition on the ground the district court had no jurisdiction of defendants or the subject of the action, and that the petitions do not state facts sufficient to constitute a cause of action in that the actions are prematurely brought.

Each demurrer was overruled, and the executors and their sureties have appealed.

In support of the trial court's rulings, plaintiffs contend that by the terms of the final settlement decree the executors are charged with the duty of collecting the amounts due from George and Karl and paying over to plaintiffs the specific amounts due them, and, having failed to do so, they, the executors, and their sureties, are liable.

Defendants, on the other hand, contend that by the terms of the final settlement decree the executors are not charged with any duty to collect the sums due from George and Karl, and that the extent of their duty and obligation is merely to pay the specified sums to the other six children upon receipt of payment from George and Karl, and that inasmuch as the petitions fail to allege that they have received the payments from George and Karl, no cause of action is stated.

Thus a very practical question is presented in this litigation among brothers and sisters over their father's estate. It really narrows down to the proposition as to just what were the rights, duties and obliga-

tions of all parties concerned, in view of the facts and circumstances disclosed.

The provisions of the will and of the order of final settlement are not in dispute. Furthermore, no appeal having been taken from the order of final settlement, it became final. (*In re Estate of Burling*, 179 Kan. 687, 298 P. 2d 290; *In re Estate of Johnson*, 180 Kan. 740, 308 P. 2d 100.) The quoted portion of the will, above, as applied to George and Karl, says that they shall be *required* to make payment to the executors. The order of final settlement provides that *upon* the payment being made by George and Karl the real estate devised to them shall be assigned to them in accordance with the provisions of the will. It further provides that *after* the payment by George and Karl to the executors, they, the executors, are to pay over specified sums to the other brothers and sisters, including the plaintiffs. Finally, it is provided that *upon* the executors filing receipts showing the foregoing distribution they are to be finally discharged. Neither the will nor the order of final settlement directs the executors to "move forward" and collect from George and Karl. Inferentially, at least, George and Karl are "ordered" to make the payments to the executors, and, following receipt of which, the executors are directed to make distribution.

The situation is somewhat different than though the executors had failed and neglected in their duty to collect property owed to the estate. No one would deny their liability and that of their sureties for such failure—but that is not this case. The estate is still open, the executors have not been discharged and are still subject to the jurisdiction of the probate court. (G. S. 1949, 59-301.) The facts of the Burling case, above, relied on by plaintiffs, clearly distinguish it from the matter before us. Under the facts as they existed, we believe the proper procedure was for plaintiffs to have made application to the probate court for an order directing the executors to take appropriate action for the collection of the amounts owed by George and Karl.

On the record presented, we are of the opinion the demurrers to the petitions should have been sustained. The judgment in each case is therefore reversed.

ROBB, J., dissents.