No. 46,193

In the Matter of the Estate of Bertha M. Seeger, Deceased. (W. C. SULLIVAN, Administrator of the Estate of Margaret Seeger, Deceased, GAYLE EDWARD SEEGER, Incompetent, LOWELL F. HAHN, Guardian *ad litem*, Appellees, v. MARY GROTE, Executor of the Estate of Bertha M. Seeger, Deceased, *Appellant.*)

(493 P. 2d 281)

Opinion filed January 22, 1972.

*William H. Stowell,* of Phillipsburg, argued the cause, and *Doris Dixon Stowell,* of Phillipsburg, was with him on the briefs for the appellant.

*W. C. Sullivan,* of Phillipsburg, argued the cause, and the firm of Hindman and Krysl, of Stockton, was with him on the briefs for the administrator, appellee.

*Lowell F. Hahn,* of Phillipsburg, argued the cause and was on the briefs as guardian *ad litem* for Gayle Edward Seeger (Incompetent), appellee.

The opinion of the court was delivered by

KAUL, J.: This litigation was initiated by a claim against the estate of Bertha M. Seeger, deceased, filed in the probate court by Margaret Seeger (widow and sole legatee of Glenn E. Seeger, deceased). In the course of the proceedings Margaret Seeger died and has been succeeded by W. C. Sullivan, administrator. The claim was certified to the district court wherein a trial was had resulting in a judgment generally in favor of claimant.

In essence, the question involved is whether Bertha, the surviving spouse of G. E. Seeger, acquired full ownership of or a life estate in certain personal property, consisting primarily of an interest in a bank account and a one-half interest in 14 United States "E" Bonds, under the decree of final settlement in the estate of G. E. Seeger, deceased.

The appellant, Mary Grote, executrix of Bertha's estate claims that the subject property, even though inventoried, was not an asset of the estate of G. E. Seeger's estate, but became the property of Bertha as a surviving joint tenant or in the alternative if the property was an asset of G. E.'s estate, full ownership thereof was delivered to Bertha by the final decree of the probate court in G. E.'s estate. Mary further claims that in any event all of the funds mentioned were exhausted by Bertha during her lifetime.

In order to put the issues on appeal in an understandable perspective a brief history of the Seeger family is necessary.

G. E. Seeger, father-in-law of Margaret Seeger and husband of Bertha M. Seeger, died testate on August 26, 1953. G. E. Seeger was survived by his widow and two children, a son Glenn and a daughter Mary Grote. The present controversy concerns the provisions of his will, which was executed on January 13, 1947, and consented to by his wife Bertha M. Seeger. In the second paragraph of his will G. E. Seeger devised and bequeathed to his wife, Bertha M. Seeger:

". . . [A]ll my property, real, personal, or mixed, of whatever nature or kind soever, to have and to hold as long as she lives, giving unto her the full control and management, use and enjoyment, of all of said property, and the income thereof, necessary for her support, comfort, happiness, convenience, and pleasure, and after her death, then the real estate and such of the personal property as may be remaining shall go and belong in fee to the persons as is hereinafter provided. And I direct that my said wife shall not be required to give any bond or other security as life tenant or trustee or otherwise of said property and that she shall not be required to give any accounting of the same."

In the third and fourth paragraphs of his will, G. E. Seeger devised specifically described tracts of real estate to his son, Glenn E. Seeger, and to his daughter, Mary Grote, the devises to become effective "After the death of my said wife and subject to the provisions of paragraph second above."

The fifth paragraph was in the nature of a residuary clause and reads:

"After the death of my said wife and subject to all the provisions of paragraph 'Second' of this Will, then whatever, is remaining of my real and personal property I give and bequeath share and share alike to my children, Glenn E. Seeger and Mary Grote."

Mr. Seeger also appointed his wife Bertha executrix of his will and directed that she be not required to give bond.

On October 22, 1952, some five and one-half years after the execution of the will, G. E. Seeger executed a codicil in which he devised to his daughter, Mary Grote, two parcels of real estate which had been devised to his son, Glenn E. Seeger, by the terms of the original will. In view of this change the codicil provided for a bequest to son Glenn in the amount of $3000 in cash "to offset this change." The original will was ratified and confirmed in all other respect. Bertha M. Seeger duly executed her consent to the codicil.

Subsequent to the execution of his will, G. E. Seeger and Bertha signed a signature card and a depositor's contract establishing a bank account with the First National Bank of Logan. The contract was marked a joint account, which is described in the body of the contract as an account owned jointly with the right of survivorship. As shown by the inventory in G. E. Seeger's estate, the account amounted to $9828.79 on the date of G. E.'s death.

Commencing in 1942 and running through 1945, G. E. and Bertha purchased 14 United States "E" Bonds which were apparently titled G. E. or Bertha M. Seeger. The cash value of the bonds was shown by the inventory to be $2943.19 on the date of G. E.'s death.

The inventory of G. E. Seeger's estate was filed by Bertha M. Seeger, as executrix, on September 17, 1953. It listed as assets of the estate one-half of the $9828.79 in the joint bank account less the widow's allowance of $750, leaving a net of $4164.39, and one-half of the appraised value of the bonds $1471.58. The devolution of these two items becomes the principal issue in this controversy.

Continuing with the chronology of events, G. E. Seeger died on August 26, 1953; his estate was closed on October 29, 1954.

Glenn E. Seeger died testate on July 9, 1963. His widow, Margaret, was appointed executrix of his estate which was closed on January 4, 1965.

On September 16, 1966, Bertha M. Seeger made her last will and testament in which her daughter Mary Grote, respondent herein, was nominated executrix.

Bertha M. Seeger died on August 26, 1967, her will was admitted to probate and Mary Grote was appointed executrix.

On May 14, 1968, in the estate of Bertha, Margaret Seeger filed the petition for allowance of demand which is the subject of this controversy.

In her petition Margaret sets out the background facts, which we have recited in substance, and then alleged that she was the sole legatee and devisee of her deceased husband, Glenn, and that by reason thereof she is now the owner of the money and personal property in which Glenn Seeger held a vested remainder interest under the will of G. E. Seeger. Margaret further alleged that the journal entry of final settlement in the estate of G. E. Seeger set out the real estate in which Bertha was to have a life estate and the remainder interest therein that was given Glenn and Mary, but that said journal entry did not set forth with particularity the extent and nature of the title of each legatee (Glenn and Mary) acquired by them in the money and personal property under the will and codicil of G. E. Margaret also alleged that all money and personal property, as well as the land described in the will, was bequeathed to Bertha as a life estate, which she enjoyed during her lifetime and that Glenn E. Seeger had a vested remainder in $3000 of money remaining by reason of the codicil to G. E.'s will, and in addition a vested remainder in one-half of the remaining money and personal property, that Bertha's interest in the personal property, money and bonds, terminated upon her death and petitioner became entitled to the possession of said property to the value of $5798.44, which sum, petitioner prayed the executrix of Bertha's estate be directed to pay over to her.

The inventory in Bertha's estate shows that on her death, in addition to real estate appraised at $20,000.00, she had $18,933.14 in cash; the 14 United States "E" Bonds valued at $4546.79; crops and agricultural payments totaling $2468.39; and a small amount of household goods.

Mary Grote, executrix of Bertha's estate, filed an answer to Mar-

garet's claim denying that Glenn had a vested remainder in the bonds, money and personal property. Mary alleged that on the final settlement of G. E.'s estate the probate court adjudged Bertha to be entitled to all of the cash, personal property and United States "E" Bonds belonging to the estate and did not grant to Glenn any remainder interest in any of the said personal assets, and that the judgment of the probate court became final, was not appealed from and is res judicata.

Mary further alleged that the bonds and bank account mentioned in the inventory of G. E.'s estate were not assets of the estate, but were owned by G. E. and Bertha in joint tenancy; that the debts and expenses of administration more than exhausted the only personal property in the estate which was subject to claims of creditors; and that as a result there were no funds or property remaining to meet the $3000 bequest to Glenn or any sums to pass to Mary and Glenn under the terms of the residuary bequest set forth in paragraph fifth of G. E.'s will.

Mary also made a counterclaim against Margaret, the disposition of which is not at issue in this appeal.

After issues were joined, a pretrial conference was held and the case was set down for trial to the court. The trial court heard evidence offered by both parties and at the conclusion of the trial made comprehensive findings of fact and conclusions of law.

The trial court found generally for Margaret, the claimant, and allowed $3000 with eight percent interest from date of Bertha's death, representing the bequest to Glenn made in the codicil, and in addition one-half of the remainder of cash and personal property computed to be $1,812.31, or a total of $4,812.31. The trial court also allowed Margaret a one-fourth interest in the 14 United States "E" bonds.

Findings of fact made by the trial court, which we believe pertinent to the disposition of this appeal, are Nos. 3, 6 and 7, which read:

"3. The Will and Codicil thereto, of G. E. Seeger, was admitted to probate by the Probate Court of Phillips County, Kansas immediately after the death of G. E. Seeger, and Bertha M. Seeger appointed Executrix thereof. She inventoried and appraised in said estate, household goods of the value of $400.00, a Chevrolet automobile of the value of $25.00, wheat in the bin of the value of $1,700.00, a ½ interest in 14 United States Government "E" Bonds of the then value of $1,471.58, and ½ interest in a bank account in the First National Bank of Logan, Kansas, amounting to $4,914.39. The Inventory and

Appraisal was duly sworn to by Bertha M. Seeger as Executrix, and filed in said estate. The wheat in the bin was subsequently sold for $1,810.92. Bertha M. Seeger continued the account in the First National Bank as the estate of G. E. Seeger or Bertha M. Seeger, Executrix and opened up an individual account in her own name, transferring ½ of the original account thereto and deposited $750.00, her widow's exemption in said account and continued to carry said account the rest of her lifetime.

. . . . . . . . . . . . .

"6. After payment of all of the expenses of said estate, there remained cash of $6,199.62, ½ interest in the 14 Government Bonds, the household goods and the 1937 Chevrolet automobile which were inventoried and appraised in said estate and/or deposited in the estate bank account, included in the income tax returns of the estate, and contained in the final report of said Executrix, all of which were sworn to by the Executrix as being correct, except the income tax returns which are varified by law.

"7. In the final settlement the Court decreed that Bertha M. Seeger was entitled to the residue of said estate, which included all of the above stated personal property, as a legatee and devisee, and said property was delivered to her. The Court did not decree in what capacity said property was delivered to her, there are no orders in the decree indicating full ownership such as absolute, forever, etc., and the Court specifically refrained from finding that Bertha M. Seeger was the sole legatee. The Court finds that it was the intention of the Probate Court to deliver said property as per the terms of the will of said decedent and in accordance with Section 59-1506, K. S. A., which limits her interest therein to a life estate, subject to her right to use the same if it was necessary for her support, comfort, etc.,"

The trial court further found that at all times during her lifetime after the death of her husband, Bertha had an individual bank account of more then $8000 and that, after the personal property was delivered to her in the G. E. Seeger estate, she had adequate funds to supply all of her needs.

The trial court set out several theories in support of its conclusions. First, the trial court concluded that Bertha waived any right to claim joint tenancy rights in the subject property owned by G. E. by consenting to his will and codicil. Second, that by placing the subject property in the inventory of the G. E. Seeger estate, depositing the money in the estate bank account, including it in the 1954 estate income tax returns, including it in her final account and, otherwise, handling and treating it as property of the G. E. Seeger estate, Bertha and all claiming under her were estopped from denying that the same was property of the G. E. Seeger estate. However, we believe the determination and the reasoning in support thereof, set out in Conclusion No. 3 effectively resolves the issue.

Conclusion No. 3 reads:

"Since the Probate Court did not define in what capacity it delivered the personal property of the estate of G. E. Seeger to Bertha M. Seeger, refraining from using any words indicating full ownership, such as absolute, sole legatee, etc., the court construed said decree as following the terms of decedent's will and Section 59-1506, K. S. A. which limits her interest to a life estate therein."

Before further decussing the points raised on appeal, we should again point out that there is no dispute concerning any of the real estate, and that essentially there are only two items of concern— the one-half interest in the bank account and the one-half interest in the 14 United States "E" Bonds, which were inventoried as assets in the G. E. Seeger estate.

On appeal, the appellant, Mary, takes the position that Bertha's consent to the will did not extinguish her rights in the joint tenancy bank account and bonds; that she is not estopped from claiming that the property belonged solely to her; that the final decree in G. E.'s estate granted her all of the personal property absolutely and is res judicata; and that the legacy to Glenn provided in the codicil failed because there was insufficient personal estate.

The appellee, Margaret, on the other hand, argues that Bertha waived the right to claim joint tenancy rights by consenting to G. E.'s will and codicil; that because of her various acts treating the property as belonging to the estate of G. E. Seeger she became estopped; that the action is not an attack on the final decree in G. E.'s estate, but only an action to construe it; that Bertha at all times had adequate funds for her needs; and that there was no evidence that Bertha had ever used the corpus of the property in question or a portion thereof for her support.

It appears that both parties deem the final decree in G. E.'s estate as final and res judicata, their differences arise with respect to the effect and construction thereof. The position of the parties with respect to the finality of a final decree is in accordance with our holdings.

In considering the finality of a decree of final settlement in the case of *In re Estate of Burling*, 179 Kan. 687, 298 P. 2d 290, we said:

"It is the fundamental rule of this court that where a court has jurisdiction of the parties to an action and of the subject matter thereof and renders a judgment within its competency, the judgment is final and conclusive unless corrected or modified on appeal, or by such other method as may be prescribed by statute and it cannot be attacked collaterally otherwise. [citing cases]." (p. 694.)

The instant action is not a collateral attack upon the decree of final settlement, but rather seeks an interpretation thereof. (See *In re Estate of Cipra,* 173 Kan. 330, 246 P. 2d 264.)

This is not an action to construe a will, nevertheless, we believe an analysis of the entire will and codicil of G. E. Seeger is warranted because the matter whether the final decree conforms with the provisions of G. E. Seeger's will is worthy of consideration.

It is evident from an examination of his will that G. E. Seeger, with the consent and cooperation of his wife, Bertha, carefully planned the distribution of his estate. He first made adequate provision for the "support, comfort, happiness, convenience and pleasure" of his wife by bequeathing to her for as long as she lived all of his property with full right of control and management. He then meticulously divided the remainder interests in real estate by specific devises to his son and daughter. Then in the fifth paragraph of his will he divided whatever remained of the real and personal property share and share alike between Glenn and Mary. It is thus apparent he intended that after providing for his wife, the remainder of his estate should be divided in what he apparently considered to be portions equal in value between his two children. This intention is further demonstrated by the codicil in which he changed a devise of real estate from Glenn to Mary, but equalized by bequeathing Glenn $3000. Bertha, it must be inferred, was fully aware of G. E.'s intentions and concurred therein as evidenced by her consent to the will and codicil.

It is worthy of note that Bertha filed the inventory in G. E.'s estate showing a one-half interest in the bank account and the bonds as assets of the estate on September 17, 1953, less than one year after she executed her consent on October 22, 1952, to the codicil, which provided a $3000 bequest to Glenn in lieu of the interest in real estate previously devised to him.

The intentions of G. E. Seeger, as reflected by his will and codicil, were effected by the probate court's final decree as construed by the district court.

Regardless of what rights, if any, Bertha had as a surviving joint tenant she made no attempt to exercise them, but instead listed a one-half interest in the bank account and bonds as assets of the estate, thus providing some assurance that Glenn's bequest could be paid upon her death. It is true, the probate court did not define in what capacity it delivered the property to Bertha on final settle-

ment, nor did it set forth with particularity the extent and nature of the interest acquired by Glenn and Mary in the remainder under the codicil and paragraph fifth of the will. Can it be said the probate court made the order of final distribution in G. E.'s estate without considering the provisions of his will and codicil and, in fact, in contravention thereof?

While it must be conceded the final decree was not carefully drawn; nevertheless, we believe the probate court intended distribution in conformance with the will, rather than in opposition thereto, and that the final order was made in accordance with K. S. A. 59-1506. The decree merely assigned to Bertha "all personal property, all United States 'E' Bonds; and a life estate in and to all of the real estate." The probate court did not use any words indicating full ownership of such as "to be her property absolutely."

K. S. A. 59-1506 of the Probate Code reads:

"When by will the use or income of personal property is given to a person for a term of years or for life, and another person has an interest in such property as remainderman, the court, unless the will provides otherwise, *may order such property to be delivered to the person having the limited estate,* or to be held by the executor or some other person as trustee for the benefit of the person having the limited estate. Bond may be required of the person to whom the property is delivered or by whom it is held, in the first instance or at any time prior to the termination of the limited estate." (Emphasis supplied.)

An order of final settlement, in similar terms and entered under circumstances almost identical with those of the instant case, was considered in the light of 59-1506 in the case of *In re Estate of Cipra,* supra.

In the *Cipra* case a daughter, Alice Choate, filed a demand against the estate of her mother, Mabel Cipra, Alice's demand was based on a provision of her father's (Wenslow Cipra) will by which she and her sister were bequeathed the remainder interest after her mother's life estate in personal and real property. As in the instant case, the mother was the executrix of the father's will and under the order of final settlement paid over to herself, without qualification or mention of the daughters' remainder interests, the sum of $18,493.40 remaining in the estate. Eleven years after the father's death, Mabel, the mother, died in possession of the personal property in question. Alice filed her claim in the mother's estate. In construing the *Cipra* final order of distribution in the light of K. S. A. 59-1506 (then G. S. 1949, 59-1506), we said:

"It will be noted that the probate court in the Wenslow Cipra estate could

have ordered the property in question held by the executor or some other person as trustee for the benefit of Mabel. It also had the power since there was nothing in the will to provide otherwise to order the property to be delivered to Mabel since she was the person having the limited estate. Such is the order the court saw fit to make. It is entirely consistent with the terms of Wenslow's will. . . ." (pp. 333, 334.)

In her reply brief Mary attempts to distinguish *Cipra* from the instant case. First, she argues that the cases are distinguishable because there was no joint tenancy property involved in *Cipra*. The matter is irrelevant since the property in question here was shown as an asset of the estate in the decree of final settlement, a determination which is res judicata.

Mary claims the two decrees are worded differently. True, there are some minor variations in language, but there is no material difference in the effect of the two decrees. Both decrees deal with wills creating life tenancies, and both order the property delivered to the life tenant without using any words indicating a delivery of absolute ownership. In both cases the claims were filed against the life tenant's estate. The principle upon which the *Cipra* decision rests is fully applicable and controls the decision in the instant case.

In view of what has been said it is unnecessary to consider whether Bertha's consent to the will and codicil worked a severance of joint tenancy if such existed in the subject property. The trial court did not specifically find the existence of joint tenancy, but merely concluded that Bertha "waived right to claim joint tenancy rights"—by consenting to the will and codicil. Whether Bertha intended a waiver of any joint tenancy rights by her consent is immaterial to our decision here. The record shows that she never asserted any rights of joint tenancy, but to the contrary listed a one-half interest in the United States "E" Bonds as an asset of the estate and transferred one-half of the Bank account and a widow's allowance of $750 to her own account, listing the remainder as an asset of the estate. There was no mention made in the inventory, the petition for final settlement or in the final decree that any of the assets were listed only for inheritance or estate tax purposes. In the absence of definite evidence to the contrary, a decree of final settlement in a testate estate should be construed to operate in conformance with the terms of the will and the statutes pertaining thereto.

We hold that under the provisions of K. S. A. 59-1506, and in accordance with the terms of G. E. Seeger's will and codicil, that

the probate court, by its final decree, delivered the subject property to Bertha as the person having the limited estate for her use and enjoyment during her lifetime.

Concerning Mary's contention the $3000 legacy to Glenn failed because there was insufficient personal estate to make the legacy operative, the trial court found to the contrary as set forth in Finding No. 6 quoted hereinbefore. The items of property listed by the trial court in Finding No. 6 are precisely the same as those items of personal property found to be left for distribution by the probate court in its final decree in the G. E. Seeger estate. The pertinent portion of the final decree referred to reads:

". . . [L]eaving for distribution the following property:
    "PERSONAL
"Cash    $6199.62
"One Half interest in 14 Government Bonds
"Household goods.
"One 1937 Chevrolet Auto."

Under the provisions of the second paragraph of G. E. Seeger's will, Bertha was given the use and enjoyment of all the property described, and the income therefrom, necessary for her support, comfort, etc. It appears that Bertha did not find it necessary to use any of the corpus of the subject property. This matter is further explained by the trial court's finding that Bertha at all times had more than $8000 in her individual bank account. It should also be noted that the inventory of Bertha's estate shows a checking account in the amount of $18,933.12. The trial court's findings in this regard are fully supported by the evidence. Even though she was authorized, if necessary, there is no evidence to show that Bertha ever used any of the corpus of the G. E. Seeger estate.

For the reasons stated, the judgment of the trial court is affirmed.