Virginia COLEMAN, Plaintiff,

v.

The UNITED STATES of America,
Defendant.

Carolyn Coleman ROUNDS, Plaintiff,

v.

The UNITED STATES of America,
Defendant.

Civ. Nos. W–2223, W–2224.

United States District Court
D. Kansas.

Aug. 8, 1963.

Malcolm Miller and Donald L. Cordes, of Foulston, Siefkin, Schoeppel, Bartlett & Powers, Wichita, Kan., for plaintiffs.

Newell A. George, U. S. Atty., Kansas City, Kan., and Robert W. Green, Asst. U. S. Atty., Wichita, Kan., Faust F. Rossi, Tax Division, Dept. of Justice, Washington, D. C., Louis F. Oberdorfer, Asst. Atty. Gen., Edward S. Smith, Jerome Fink, William A. Miner, Howard N. Singes, Attys., Dept. of Justice, Washington, D. C., for defendant.

TEMPLAR, District Judge.

These actions were brought for the recovery of estate taxes paid by the taxpayers who were heirs-at-law of Georgia C. Jones, deceased, after the administration and closing of her estate.

At the hearing of these cases before the Court, the parties submitted a stipulation covering the facts of the case which may be summarized as follows:

Georgia Coleman Jones, died testate on the 12th day of January, 1954 while a resident of the city of Las Vegas in the state of Nevada. On October 7, 1955 a federal estate tax return was filed for her estate in which it was reported that the gross estate amounted to $256,744.35, with tax and interest due of $10,171.18.

On the 7th day of October, 1955 there was paid to the Collector of Internal Revenue the sum of $10,171.18. Thereafter and on May 29, 1958 the Collector of Internal Revenue assessed a deficiency in estate tax and interest against the estate in the amount of $34,713.32.

On June 9, 1958 this amount was paid to the Collector.

On January 14, 1959 the estate of Georgia Coleman Jones, being administered in the District Court of Clark County, Nevada was closed. A timely refund claim in the amount of $6,512.70 was filed by each of the plaintiff taxpayers, representing the proportionate amounts of taxes and interest paid by them.

During her lifetime and on November 30, 1949, Georgia Coleman Jones (then Georgia Coleman) created an irrevocable intervivos trust with herself and the First National Bank of Wichita as the trustees. The income from the trust was reserved to the settlor for her life.

Upon her death, the trust provided as follows:

"Upon the death of the settlor this trust shall terminate and the corporate trustee shall forthwith distribute the entire trust estate to the persons who shall be designated in the settlor's last will and testament to receive the same."

The trust corpus remained in and was administered in the State of Kansas during the lifetime of settlor with the First National Bank of Wichita, Kansas, acting as trustee. The trust instrument provided that it was to be construed

and interpreted under the laws of the State of Kansas.

Sometime after executing the above trust instrument, Georgia Coleman Jones moved to the State of Nevada and died there, a resident of said state on January 12, 1954. Surviving her were her two children, complainants herein, and her husband, Whipple Van Ness Jones. Her last will and testament which was executed on March 20, 1953, was duly admitted to probate by the District Court in and for the County of Clark, Nevada. Her husband, Whipple Van Ness Jones, and the First National Bank of Nevada, Reno, Nevada, were duly appointed and qualified as executors of the estate.

In pursuance of their duty to marshal the assets of the estate of Georgia Coleman Jones, the executors made demands upon the First National Bank of Wichita, Wichita, Kansas, for delivery over to them of the corpus of the aforementioned trust, which corpus then consisted of about $200,000.00 in United States bonds. The First National Bank of Wichita, however, refused to surrender the property on the basis that it was not clear whether under the will of Georgia Coleman Jones, the power of appointment reserved by her was exercised. The said last will contained no mention of the trust or of the power of appointment. There was a general residuary clause; however, that clause did not refer to any power of appointment and purported to apply only to the property owned at the time of the death of Georgia Coleman Jones. The residuary clause read as follows:

"FOURTH, All the rest, residue and remainder of the property which I may own at the time of my death, both real and personal and of every kind and description, wherever the same may be situated, I give, bequeath and devise to my husband, WHIPPLE VAN NESS JONES, and to FIRST NATIONAL BANK OF NEVADA, RENO, NEVADA, a National Banking Institution, as joint tenants, in trust, however, for the following uses and purposes."

The will then went on to provide that income from such testamentary trust was to be paid to the husband of the testator Whipple Van Ness Jones, for his lifetime, and, upon his death, the principal was to be distributed equally to complainants herein or to their heirs.

Following the death of Mrs. Jones, the First National Bank of Wichita, as trustee, filed an action in the District Court of Sedgwick County, Kansas, for the purpose of obtaining a construction of the trust instrument and for instructions from the Court as to the proper distribution of the assets of the trust. This action was filed following a demand on the trustee, made by the Executors and Trustees of the Will of Georgia Coleman Jones, appointed by the Clark County District Court in the State of Nevada, that said trust property be delivered to them. The First National Bank of Wichita as Trustee requested the Court to determine particularly whether Georgia C. Jones, by the residuary clause of her Last Will and Testament exercised the power of appointment reserved to her in the trust agreement under which that bank was operating, or whether she died intestate as to the assets of the trust estate created by that agreement, and in such event that the Court determine such intestacy as to the assets of the trust, and that the Court further determine who are her heirs-at-law and in what proportions distribution of the trust property should be made to such heirs-at-law. A copy of the entire court proceeding had by the Sedgwick County District Court and a copy of the entire proceedings before that Court were made a part of the stipulation.

In the action filed by the Trustee, First National Bank of Wichita, the Executors under the Will appointed by the Nevada Court, as well as the heirs of Mrs. Jones, who were Whipple Van Ness Jones and the two plaintiff taxpayers herein, were named as parties.

To the Petition of the Trustee, Virginia Coleman filed an Answer contending that since the power of appointment

42

reserved in the Trust had not been exercised in the Will that her mother had died intestate as to all property contained in the Trust, and that the Court should adjudge the Trust terminated as of January 12, 1954, and the Trust property be distributed under the laws of intestate succession of the State of Nevada.

The Answer of Virginia Coleman Nafziger was adopted as the Answer of Carolyn Coleman Rounds.

The First National Bank of Nevada and Whipple Van Ness Jones, as Executors of and Trustees under the Last Will and Testament of Georgia C. Jones, deceased, filed their joint Answer in which they requested the dismissal of the action brought by the First National Bank of Wichita, Trustee, contending that no good faith doubt as to the meaning of the trust agreement exists, that if such doubt exists, it is immaterial to any rights of plaintiffs in effecting delivery of the assets to the Executors and Trustees of the decedent's Will to them in return for their receipt and release, and further alleging that there is no ambiguity in the Will and no reason to construe the same, and challenging the jurisdiction of the Court to attempt to do so. In their pleading the Executors and Trustees of the Will filed a Cross-Petition in which they allege that the First National Bank of Wichita as Trustee has converted the $200,000.00 in assets to which the Executors are entitled and demanding judgment requiring the Trustee to deliver the assets of the Trust, together with all interest accrued and collected by the Trustee, to the Executors under the Will and in the alternative that they have judgment against the Trustee in the amount of $200,000.00 plus interest.

There was likewise a separate Answer by Whipple Van Ness Jones as an individual and beneficiary of the assets coming into the hands of the Executors and Trustees of the Will of Georgia C. Jones, deceased. In his Answer he adopted all the denials and allegations of the Executors and Trustees under the Will by reference and asked the Court to enter a judgment in accordance with the prayer of the Cross-Petition filed by the Executors and Trustees of the Will.

The plaintiff, First National Bank of Wichita, filed an Answer to the Cross-Petition of the Executors and Trustees of the Will in which it denied that it refused to deliver the assets of the Trust to the Executors and the Trustees of the Will, but on the contrary alleged that it was carrying out a request made to it by the Executors and Trustees of the Will, that a judicial determination be made as to the disposition of the Trust at its termination. The Trustee, as plaintiff generally and specifically denied all other allegations contained in the pleading of the Executors and Trustees of the Will.

Following the filing of the pleadings by the parties in interest as outlined above, all the parties to the action appeared for trial of the case before the State Court on June 2, 1955. At that hearing the parties by and through their attorneys made statements of their position conforming to the pleadings they had filed. Certain facts were established by admission of the parties, and after disclosing their positions and after submitting to the trial court documents bearing upon the issues involved, the trial court announced that "it seems to me that the better rule would be, under the evidence or facts in this particular case that the power was not exercised in the Will by the residuary clause of the Will. I am of the opinion that the power was not exercised." "The Court is going to hold that the power was not exercised. So let's go from there."

Thereafter on November 30, 1955 after briefs were filed by the parties pursuant to their request for permission to do so and the trial court's direction that same should be filed, and after they had been considered by the trial judge, the judge advised counsel for all the parties that his judgment would be "that the trust created on November 30, 1949 was terminated by the death of Georgia Coleman Jones, the settlor, and that the said Georgia Coleman Jones failed to exercise the power of appointment reserved to her

under the trust agreement, and therefore the assets of the trust were not any part of the estate and should be distributed by the Trustees to her surviving husband and two daughters in accordance with the intestate laws of the State of Kansas, which entitled the defendant Whipple Van Ness Jones as an individual to receive one-half of the trust property and Carolyn Coleman Rounds and Virginia Coleman (now Nafziger) one-fourth each."

The files in that proceeding disclose that a Journal Entry was prepared by counsel pursuant to this announcement by the Court, and the same was filed and judgment entered in conformity therewith on December 9, 1955.

From this judgment no appeal was taken although such action was considered by the Executors and Trustees of the decedent's estate. Their reasons for determining that no appeal should be taken according to the undisputed evidence does not lend any support to the government's contention that the judgment entered was collusive.

It now appears that the First National Bank of Wichita, as Trustee, has disbursed the assets of the Trust in the manner directed by the State Court decree and that Whipple Van Ness Jones received $100,000.00 and the two plaintiffs in the present action received $50,000.00 each. These amounts were reduced by certain fees, expenses and costs deducted, about which the parties to the judgment make no complaint.

## QUESTION NOW TO BE DETERMINED

The question now presented, according to the government's brief, is "whether the corpus of the trust established by Georgia C. Jones, deceased, on November 30, 1949, passed by the Will of the decedent to or for the benefit of the decedent's husband, Whipple Van Ness Jones, as a life estate or terminable interest, and, therefore, did not qualify as a part of the marital deduction under Section 812 of the Internal Revenue Code of 1939."

Before this question may be resolved, there must be a determination made of the legal consequences involved in the proceedings, and in the final judgment and decree of the District Court of Sedgwick County, Kansas in which determination was made of the property rights and interests of the parties in this trust property. If it be ascertained that the State Court had jurisdiction of the parties in interest, that it had jurisdiction of the property involved in the controversy before it, and the power and authority to enter the judgment that it did, it would appear that the interested parties would be bound by it. In the event such jurisdiction and power existed in the State Court, then it must be ascertained whether the judgment of the Court adjudicated the rights of the parties in the property involved and fixed their title in it under state law, and placed the surviving spouse in the full and complete title of his distributive share which was found and determined to be fifty percent of the property held by the Trustee at the date of decedent's death.

It is at this crucial point that the government's contention comes into focus, for, says the government, though legal rights and interests of the parties in property are created and determined by state law, still, if the order or judgment by which such property rights are determined is obtained through collusion or attended with some other badge of fraud, or is entered in a non-adversary proceeding, then it is not binding as between one or more parties to such proceeding and the government in respect to income or estate tax imposed by federal legislation.

Consideration should first be given to the question of jurisdiction of the State Court to render the judgment which it did before the record is reviewed to see if the more serious claim of fraud, collusion and non-adversary proceedings as charged by the government is sustained by the preponderance of the evidence.

## JURISDICTION OF THE COURT

It is and cannot be disputed that the assets of the Georgia Coleman Trust, at

the time of her death on January 12, 1954, remained in the hands of the Trustee, First National Bank of Wichita, and that its situs was in Sedgwick County, Kansas; that the District Court of Sedgwick County, Kansas is a court of general jurisdiction in that state; that the Trust terminated with the death of Georgia Coleman Jones; that she did not specifically by her Last Will and Testament designate the persons who were to receive the trust estate and that all interested parties making claim or having a right to make any claim to the trust property appeared at the hearing and trial of the action brought by the Trustee in the Sedgwick County District Court to have determined the ownership of the property previously held in trust, and for a determination of the proportions and the manner in which the same should be distributed.

In Kansas, the state district courts are held to be proper courts for the administration of a trust estate, and are held to be authorized to advise and direct a trustee in all matters pertaining to the Trust. The statutes of Kansas specifically provide for jurisdiction of district courts in matters relating to trusts created by written instrument other than by wills. G.S.Kans.1949, 59–301(8).

The Kansas Legislature by specific legislative edict, provided that all courts of record within their respective jurisdictions should have the right to afford relief from uncertainty, insecurity and doubts attendant upon the controversies over the meaning and legal construction of express trusts and trust instruments, and that the act should be liberally interpreted and administered with a view of making the courts of the state more serviceable to the people. (Laws of 1941, Chap. 289.)

Clearly, the Sedgwick County District Court had jurisdiction over the matter brought before it. This view is sustained by the cases of Knox v. Knox, 87 Kan. 381, 124 P. 409; by Achenbach v. Baker, 151 Kan. 827, 101 P.2d 937, and by Coolbaugh, Trustee v. Gage, 182 Kan. 145, 319 P.2d 146. Furthermore the trust instrument itself provided that, "this trust agreement shall be interpreted and construed according to the laws of the State of Kansas."

Jurisdiction is the power of a court to hear and decide a matter, and the test of jurisdiction is not a correct decision but a right to enter upon inquiry and make a decision; it is not limited to the power to decide a case rightly, but includes the power to decide it wrongly. (See cases cited In re Johnson's Estate, 180 Kan. 740, at page 746, 308 P.2d 100, at page 106.)

Again, where jurisdiction of a court depends upon a fact that is litigated in a proceeding pending before it, and is adjudicated in favor of the party asserting jurisdiction, the question of jurisdiction is judicially decided, and the judgment record is conclusive evidence of jurisdiction until set aside or reversed in a direct proceeding, and may not be otherwise attacked collaterally. (In re Estate of Burling, 179 Kan. 687, 694, 298 P.2d 290.)

Though the judgment of the Sedgwick County Court made no specific finding of jurisdiction, it must be held that even where jurisdiction of a court depends upon a finding of a particular fact, the exercise of jurisdiction implies the finding of that fact. So here, the Court exercised jurisdiction and no appeal having been taken by an interested party, and the fruits of the judgment having been received by the parties, the judgment is conclusive. Bindley v. Mitchell, 170 Kan. 653, 656, 228 P.2d 689.

The defendant has raised no issue on the question of the State Court's jurisdiction and furnishes the Court no authorities on this point.

This Court is satisfied that the District Court of Sedgwick County, Kansas had jurisdiction of the parties and the subject matter of the action and the power to make the determination and adjudication by which it established the property rights of the parties in the assets held by the First National Bank of Wichita in the Georgia Coleman Jones

trust at the time of her death. It was by that judgment and order that the ownership of that property was fixed and established between all the parties having any interest therein and under which distribution was made to them as their definite portions were established. The interest of Whipple Van Ness Jones, as determined by the State Court, was a complete fee interest and as such was not terminable and does qualify for the marital deduction.

### COLLUSION AND FRAUD

The defendant bases its sole defense and seeks to avoid the force and effect of the State Court's decree of title, not on the question of jurisdiction, but on the assertion and charge made by the defendant that the judgment of the State Court is not binding on the federal government because it was obtained in a non-adversary, collusive and, in effect, a fraudulent proceeding. The defendant undertakes to make more mellow the charge of collusion which is a badge of fraud by dulcet statements in which it urges that such charge (of fraud) is not really intended by it. However, the effort of the defendant to convert fraudulent conduct into something different and less repulsive does not lessen the seriousness of the accusation.

This Court has taken the time to review the entire record, including all the pleadings, briefs, exhibits, transcripts of statements and depositions plus the file of the State Court proceedings. It should be first observed that the defendant did not in its Answer in either case plead the defense of collusion, a species of fraud, or allege that the proceeding was non-adversary. The defendant contends that the language of the Court in Brodrick v. Gore, 224 F.2d 892 (C.A.10th) at page 896, cannot be construed to mean that the defendant relying on collusion or fraud must so plead, even though the Court in that case said:

"But here, the order or judgment entered by the probate court was expressly pleaded in the complaint. In his answer, the Director admitted the entry of such order or judgment, and he did not plead that it was collusive, or was otherwise fraudulent, or was entered in a nonadversary proceeding. His answer was silent in respect to tendering any issue of that kind. And in the absence of collusion, in the absence of other bad faith, and in the absence of its entry in a nonadversary proceeding, the order or judgment must be given effect as a judicial determination that the executors were obligated to sell and convey to the surviving copartners the interest of the decedent in the partnership property for a sum equal to the book value thereof, and as a judicial determination of such book value."

And see Steele v. United States, 146 F. Supp. 316, 318. (D.Mont.)

██ While this Court believes that the failure to affirmatively plead collusion in obtaining the judgment in question should preclude the defendant from relying upon that defense, the Court will nevertheless proceed to consider the matter of collusion, fraud and non-adversary proceedings even though they are not presented by the pleadings.

The defendant concedes that in determining whether the Nevada Will of Georgia C. Jones exercised the testamentary power of appointment created by the Kansas trust, the Kansas Court should apply Kansas property law.

However, the defendant urges the Court to ignore the determination made by the Kansas Court adjudging that the Will of Georgia C. Jones, and particularly the residuary clause thereof, did not exercise the power of appointment contained in the Declaration of Trust even though this conclusion was announced by that Court in proceedings on the second day of June, 1955, at which time all the parties in interest were present and participated in the hearing and trial and took sharply divergent views as to the law applicable in the case. It is apparent that the State Court followed the general rule in making its decision on

this point; there being no prior determination of the question by the Kansas Supreme Court. (See Simes on Future Interest § 63 page 205.) In this Court's view of the law, the State Court could not have reached any other conclusion.

Significantly, it is observed that the defendant makes no contention that there is any evidence whatsoever of collusion on the part of the contending parties to the estate of Georgia C. Jones at the time the Kansas Court decided that the power of appointment was not exercised.

■ Notwithstanding it is urged by the defendant that after this ruling was announced by the Kansas Court on June 2, 1955 the parties then entered into connivance for the purpose of obtaining a determination by the Kansas Court which would qualify a portion of the money which had been held in trust as a marital deduction under Estate Tax law provisions. This Court is urged to ignore the judgment, announced by the Kansas Court on November 30, 1955 and entered December 9, 1955 in which that Court determined that the assets of the trust passed under the laws of intestacy of the state of Kansas, one-half to the surviving spouse and the other half in equal shares to the two children of the decedent. The defendant declares that this decision was not only contrary to law but that it was a collusive proceeding and not binding on, the Treasury Department of the Government in determining the liability of the Jones estate for Estate Taxes.

In such circumstances, this Court has the right to determine whether a State Court judgment is collusive, fraudulent and non-adversary. It should be realized, however, that simply because a State Court enters a judgment that conforms to the wishes of some of the litigants, this fact does not establish it as collusive, nor is it any evidence of collusion, since a court must decide a cause when it is submitted, as here.

### EVIDENCE OF COLLUSION

Defendant points to the fact that the estate tax return was filed by the Executors on October 7, 1955, some two months before the Sedgwick County District Court judgment was entered and argues that it set up a formula of distribution consistent with the Court's final judgment. In addition, the defendant insists that the correspondence carried on between the First National Bank of Nevada and its attorney and the other attorneys requires a finding of collusion.

This evidence would appear to establish that the alleged collusive acts of the parties took place immediately following the announcement in June of 1955 by the trial judge in the state court that the Will of Mrs. Jones did not exercise the power of appointment in the trust agreement. However, it should be noted that the estate tax return was due not later than October 12, 1955, and that the due date had been extended previously at the request of the executors. Notwithstanding the fact that the most favorable position was taken by the Executors from the standpoint of tax liability is not persuasive that a collusive determination had been made among the parties. Informed taxpayers, as a rule, will submit a return which gives them the greatest tax advantage. Experience in negotiations with representatives of the Internal Revenue Service may very well justify taking such a position.

Moreover, the correspondence found in the file of the Nevada Bank indicates a situation that occurs in many lawsuits; negotiations, with a view of settlement, are generally carried on under assumed facts and under an assumption of what the Court will conclude the law to be under those facts. Partisan counsel may convince themselves that a Court can properly make no other determination than the judgment for which they contend.

The Court fails to find anything evil in efforts to settle litigation, nor anything reprehensible in considering the manifest ramifications of tax laws, and their application while so doing. This Court has followed a policy of encouraging negotiations in litigation designed to settle issues of fact and to determine questions

of law involved even though a complete settlement of a case may not always be effected. The statements or admissions made by parties indicating such negotiations are not ordinarily admissible as evidence against them. Again, this Court believes there is nothing wrong with discussing and considering the tax consequences of any matter; it is not the avoidance of taxes, but the evasion of taxes which is condemned.

The Court recognizes that very often speculation by counsel on what a Court's decision will be is inaccurately stated as being the declaration of the Court. The record in this case discloses that letters written by counsel to clients contained mistaken assumptions of this nature. It would extend this opinion unnecessarily to recite all the details of the evidence. It is sufficient to point out that following the hearing on June 2, 1955, and on July 27, 1955, Carolyn Rounds and Virginia Coleman Nafziger filed briefs insisting, among other things, that the trust property should be distributed as intestate property under the laws of Nevada which would have given each of them one-third of the $200,000.00 trust. From this position they never retreated and there is no evidence that they ever did. The Court is convinced that the Coleman girls never entered into any collusive disposition of the case in State Court, as contended for by the defendant, for the overpowering reason, among others, that the determination of the case as it was decided by the State Court cost each of them $16,666.66, a total of $33,333.32. It may very well be that the surviving spouse and his attorneys had endeavored to negotiate a compromise with the daughters, on this basis, but surrendering over $33,000.00 to Whipple Van Ness Jones, their step-father, could not be considered by the girls as a sound basis of compromise from any point of view.

It should be observed that the proposed stipulation and compromise agreements mentioned in letters of the Nevada Executors were never settled or reached by the parties. Furthermore, the only verbal evidence offered by the defendant to sustain its contention was contained in the communications between one of the parties and its attorneys and the statement of an officer of the Nevada Bank who had no privity with the other parties to the Kansas litigation. The correspondence, when compared with the undisputed facts in the record of the Kansas Court, indicates that the suggested settlement and disposition of the Kansas action, though hopefully entertained by counsel for the Executors, was in fact never carried out; but on the contrary, the record reveals adverse proceedings down to the day of judgment with serious consideration given thereafter by the Executors and Trustees to the taking of an appeal. Until the judgment was announced, the parties, apparently unable to effect the compromise that had been considered by the attorney for one of them, had made vigorous contentions involving; *First,* whether the assets of the trust should be delivered to the Executors of the Will, and thereafter placed in trust under the residuary clause of the Will; and *Second,* whether the assets should be distributed under the laws of intestacy and *Third,* if so, whether the succession laws of Nevada or of Kansas should apply. These issues were determined by the State Court and this Court finds that those proceedings were adversary and that under the weight of the evidence in this case the judgment entered by the Judge of the State Court was not collusive or fraudulent.

Furthermore, this Court feels that the affidavit of the trial judge is convincing evidence that his judgment was not the result of any agreement by the parties nor the product of any negotiations with him for the purpose of obtaining the decision reached by him. This affidavit was not contradicted. Indeed, it is a clear and an unequivocal recitation of the manner in which the case was heard, considered and determined.

Moreover, since this case involves the application of the marital deduction, we should not lose sight of the fact that such provision was enacted by Congress in order to place taxpayers in

48

common law states on an equal basis taxwise with taxpayers in community property states. Taxpayers residing in community property states held a great and undeserved advantage over taxpayers who lived in states in which the common law prevailed. Passage of the marital deduction provision was purposely designed to eliminate such discrimination. Many states went so far as to create statutory community property laws to permit their citizens to take advantage of the tax privileges community property laws afforded. Congress, in the passage of the law which made the principle of community property universal taxwise, required, as a condition for its application, that the property passing to a surviving spouse (in the common law states) must vest the spouse with the full and unrestricted title or the power to dispose of it. The interest acquired must not be a so-called "terminable interest" i. e., any interest less than complete title for the reason that if full title passed to the surviving spouse, the property so received would result in its inclusion in the spouse's estate at the time of death and then be subject to the imposition of estate tax. The purposes and objects of the marital deductions statute should not be ignored in considering the facts of this case.

To sustain its contentions, defendant urges the Court that evidence in the record requires a finding that the judgment of the State Court determining the property rights of the heirs of Mrs. Jones was in fact collusive and was obtained for the specific purpose of avoiding estate taxes that would otherwise be imposed.

Standing alone, the evidence put forward by defendant might justify its contentions. On the other hand this Court, after considering all the evidence in the case, both that which is favorable to defendant and that which is favorable to plaintiffs, is inclined to the view that the weight of the evidence is with the plaintiffs and that the property received from the assets of the Georgia Coleman Trust by Whipple Van Ness Jones, her surviving spouse, was not a terminable interest and did qualify as a part of the marital deduction.

It will be the order of the Court that the plaintiffs in each of the cases shall recover the amount of tax illegally assessed to be computed by the parties. Counsel for plaintiffs shall prepare appropriate forms of judgment to be approved by counsel and then submit same to the Court for entry.