**In re Robert GORDON, Debtor.**

**National Labor Relations Board, Plaintiff,**

v.

**Robert Gordon, Defendant.**

**Bankruptcy No. 03–12444 ABC. Adversary No. 03–1330 HRT.**

United States Bankruptcy Court, D. Colorado.

Dec. 1, 2003.

James W. Bain, Greenwood Village, CO, Deanna L. Westfall, Denver, CO, for Defendant.

Ellen M. Kelman, Denver, CO, William W. Osborne, Jr., Washington, DC, for Intervenor.

William Mascioli, National Labor Relations Board, Washington, DC, Michael T. Pennington, Denver, CO, for Plaintiff.

### ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND DEFINING SCOPE OF TRIAL

HOWARD R. TALLMAN, Bankruptcy Judge.

This case comes before the Court on Plaintiff's Motion for Summary Judgment. Plaintiff seeks judgment on its lone claim: exception to discharge under § 523(a)(6). Plaintiff is the National Labor Relations Board ("N.L.R.B."), the agency charged with enforcement of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.* Defendant ("Gordon") is the Chapter 7 debtor and former principal of three companies, "I.W.G.," "Con–Bru" and "Arlene," that installed fire sprinklers. The Court has not yet held a Rule 16(b) status and scheduling conference in this case. No trial date has been set.

### I. Facts and Procedural History

Following allegations that Gordon, individually and through his control of the three entities engaged in illegal labor practices, the N.L.R.B. pursued an administrative action (the "Prior Action") and ultimately obtained a judgment against Gordon in the amount of $821, 594.00 (the "Judgment"). The Prior Action involved a total of nine separate rulings,[1] spanning

---

1. Throughout this Order, those rulings will be referred to as "First Ruling," "Second Rul-

almost seven years from May, 1995, to April, 2002, as the case moved from an administrative law judge ("ALJ") to the N.L.R.B. to the Tenth Circuit Court of Appeals (and back and forth) before the Tenth Circuit ultimately entered the Judgment.

Specific findings of fact were made in the Second, Third and Fifth Rulings. Gordon actively defended in proceedings resulting in the First through the Third Rulings. In the Third Ruling, the Tenth Circuit enforced in part the N.L.R.B. order and remanded a portion of the order for further proceedings with respect to certain conclusions made by the ALJ and the N.L.R.B. in the First and Second Rulings. However, Gordon did not appear or defend in the remand proceedings or in subsequent proceedings that resulted in the ultimate entry of the Judgment.

In the Second Ruling (August 27, 1996), the N.L.R.B. made extensive findings of fact regarding Gordon's intent and actions. In finding Gordon liable, the N.L.R.B. ruled:

A. "Gordon's intent to evade his responsibilities under the Act could not be more clear." *I.W.G., Inc.,* 322 N.L.R.B. 69, 71[, 1996 WL 506089] (1996).

B. "Gordon's purpose in creating Con–Bru and then Arlene was to reduce his labor costs by skirting his collective-bargaining agreement with the Union .... Gordon created Con–Bru in the 'attempt[ ] to achieve his expressed goal of "going nonunion" by laying off IWG's unit employees ... and transferring the remaining work ... to Con–Bru' and then created Arlene in a 'continuing scheme to avoid IWG's contractual and stat-utory obligations to the Union and its employees.'" *Id.* at 72[, 1996 WL 506089] (footnotes omitted).

C. "First, and most significantly, the fundamental purpose of Gordon's misuse of the corporations in this case was to promote his fraudulent scheme to conceal his ownership and control of each corporation and thereby evade his labor law obligations." *Id.* at 74[, 1996 WL 506089].

On May 19, 1998, the Tenth Circuit affirmed in part and reversed in part (Third Ruling). Gordon's attorney actively argued prior to this ruling. The Tenth Circuit found that the issue of Gordon's liability as an alter ego of Arlene had not been pled, and consequently, had not been actually litigated. The court remanded the issue of Gordon's personal liability to the N.L.R.B. due to N.L.R.B.'s failure to provide adequate notice of the Arlene-alter ego claim.

On remand, Gordon did not appear or defend. He now contends, among other things, that he was never properly served and had no notice. The N.L.R.B. disagrees, stating the ALJ specifically found that Gordon had been properly served. *I.W.G. Inc.,* 1999 WL 33453665 (N.L.R.B. Div. of Judges 1999) (Fifth Ruling). The ALJ also determined that the "supplemented record" is essentially the same record that was before the Board in reaching its initial decision, that is, the factual record for the Fifth Ruling was essentially the same as it was for the Second Ruling. *Id.* Subsequent rulings affirmed this decision without additional findings of fact. Ultimately, the Tenth Circuit entered the Judgment against Gordon.

ing," etc. The date of each ruling and the court or administrative body rendering each ruling are set out in the Appendix.

The N.L.R.B. asserts that collateral estoppel from the Prior Action compels summary judgment against Gordon. Gordon contends that the Prior Action was invalid and that the Judgment should not be given preclusive effect.

## II. *Discussion*

### A. *Jurisdiction and Summary Judgment*

This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) as a matter arising under the Bankruptcy Code. This adversary is a core proceeding under 28 U.S.C. §§ 157(b)(2)(1). Venue is proper pursuant to 28 U.S.C. § 1409(a).

Fed. R. Civ. P. 56, as applied to bankruptcy cases by Fed. R. Bankr. P. 7056, dictates the standard which this Court must use in ruling on a motion for summary judgment. Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

This Court exercises great circumspection in the granting of a motion for summary judgment. There should always be a natural preference for allowing the parties to proceed to a trial on the merits where there is any factual matter subject to a bona fide dispute which bears on the ultimate resolution of the controversy. *Associated Press v. U.S.,* 326 U.S. 1, 6, 65 S.Ct. 1416, 1418, 89 L.Ed. 2013 (1945) ("Rule 56 should be cautiously invoked to the end that parties may always be afforded a trial where there is a bona fide dispute of facts between them"). "Where it appears however that there is no genuine issue as to any material fact upon which the outcome of the litigation turns, the case is appropriate for disposition by summary judgment and it becomes the duty of the court to enter such judgment." *Whelan v. New Mexico Western Oil and Gas Company,* 226 F.2d 156, 159 (10th Cir.1955).

■ The standard of proof in dischargeability matters under 11 U.S.C. § 523 is the preponderance of the evidence standard. *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Furthermore, "exceptions to discharge are to be narrowly construed, and because of the fresh start objectives of bankruptcy, doubt is to be resolved in the debtor's favor." *Cundy v. Woods (In re Woods),* 284 B.R. 282, 288 (D.Colo.2001) (citing *Bellco First Federal Credit Union v. Kaspar (In re Kaspar),* 125 F.3d 1358, 1361 (10th Cir.1997)).

### B. *Collateral Estoppel*

■ The preclusive effect given in federal court to a prior federal decision is subject to federal law. *Semtek Int'l Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 507, 121 S.Ct. 1021, 1027, 149 L.Ed.2d 32 (2001). Administrative proceedings are entitled to collateral estoppel effect. *Astoria Federal Sav. and Loan Ass'n v. Solimino,* 501 U.S. 104, 107, 111 S.Ct. 2166, 2169, 115 L.Ed.2d 96 (1991).

■ Pursuant to *Dodge v. Cotter Corp.,* 203 F.3d 1190 (10th Cir.2000), collateral estoppel applies to prevent relitigation of the issues decided in a federal court where:

1. the issue previously decided is identical with the one presented in the action in question,

2. the prior action has been finally adjudicated on the merits,

3. the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and

4. the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Id.* at 1197–98.

There is no dispute that Gordon is the same party as the party in the Prior Action and that, on its face, the Judgment, and the antecedent rulings show that the Prior Action was finally adjudicated on the merits. The Court will address Gordon's dispute that the Judgment relied upon by the N.L.R.B. is a valid and final judgment. Since the Judgment at issue was entered in the absence of Gordon's active participation in the proceedings after the Third Ruling was entered, the Court must also determine whether Gordon received a full and fair opportunity to litigate the issues in that case. Finally, the Court must determine whether the determination in the Prior Action that Gordon unlawfully terminated his union employees is identical to the issue presented in this dischargeability action of whether Gordon inflicted willful and malicious injury upon those employees.

### 1. *The N.L.R.B. Judgment is a Valid and Final Judgment*

As an initial matter, the Court will address Gordon's contention that the Judgment relied upon by N.L.R.B. is an invalid judgment and, consequently, is not entitled to collateral estoppel effect. Gordon bases his argument primarily on lack of notice of the proceedings. According to Gordon, he maintained a post office box until "sometime in 1999." He believes that notices of some of the hearings and proceedings were mailed to this post office box after he discontinued its use.

There is no dispute by Gordon that he received notice of and actively participated in the first three proceedings which culminated in the Tenth Circuit Court of Appeals' order of May 18, 1998, enforcing the initial N.L.R.B. decision in part and remanding the matter for further proceedings. In Gordon's affidavit in support of his motion for summary judgment, he acknowledges his lack of comprehension of the effect of that ruling. He states that he no longer believed that he was subject to any possible personal liability and that he discharged his attorney.

Gordon acknowledges that he received notice of the February 12, 1999, N.L.R.B. order remanding the matter back to the ALJ for further proceedings but states that he was unconcerned because he misunderstood the Tenth Circuit's ruling. In his affidavit, Gordon describes what appears to be an attempt to personally serve him with papers concerning the hearing held on April 15, 1999, before the ALJ. He acknowledges that, in fact, he discovered those papers outside of his residence on April 17, 1999, two days after the hearing took place. He took no action with respect to the matter, again, because he "didn't think that the hearing could address [his] personal liability."

As a result of that April 15, 1999, hearing, the ALJ issued his Supplemental Decision (Fifth Ruling) dated July 9, 1999. The N.L.R.B. issued its Supplemental Order (Sixth Ruling) adopting the ALJ's findings and conclusions on August 25, 1999. Gordon denies that he received copies of either of those rulings. However, he freely acknowledges that he was put on notice that N.L.R.B.'s Supplemental Order was entered because he received a letter in September of 1999 from the N.L.R.B. which referenced the order. That letter

has not been placed in the record before this Court. Gordon's affidavit states that the letter referred to the N.L.R.B. ruling but that no copy of the ruling was included in the letter. The affidavit describes no action Gordon may have taken to inform himself of the contents of that ruling aside from whatever was contained in the body of the letter.

At the April 15, 1999, ALJ hearing, the subject of notice to Mr. Gordon of those proceedings "was virtually the only matter respecting which the General Counsel and the Charging Party submitted evidence." *I.W.G. Inc.*, 1999 WL 33453665 (N.L.R.B. Div. of Judges 1999) (Fifth Ruling). That presentation included: evidence as to unclaimed or rejected certified mail sent to Gordon's address of record; testimony from the process server concerning his attempts to personally serve Mr. Gordon; and testimony as to actual service of the papers on Gordon's address of record. *Id.*

The Supreme Court has said that "[f]or more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.'" *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972) (citing *Baldwin v. Hale*, 1 Wall. 223, 233, 17 L.Ed. 531 (1863)); *Hanley v. Four Corners Vacation Properties, Inc.*, 480 F.2d 536, 538 (10th Cir.1973).

■ This Court recognizes that such due process notice is a fundamental constituent to a court's power to enter a final judgment and where due process is lacking, the resulting lack of jurisdiction renders a judgment void and open to collateral attack at any time. But, by the same token, it is "well settled that where the issue of due process has been litigated and a final judgment entered, the determination of that issue, right or wrong, is res

judicata." *Hanley v. Four Corners Vacation Properties, Inc.*, 480 F.2d 536, 538 (10th Cir.1973); *see, also, Royal Ins. Co. of America v. Quinn–L Capital Corp.*, 960 F.2d 1286, 1293 (5th Cir.1992) ("It has long been the rule that principles of res judicata apply to jurisdictional determinations—both subject matter and personal.") (quoting *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104 n. 9, 72 L.Ed.2d 492 (1982)); *Coleman v. U.S.*, 221 F.Supp. 39, 44 (D.Kan.1963) ("[W]here jurisdiction of a court depends upon a fact that is litigated in a proceeding pending before it, and is adjudicated in favor of the party asserting jurisdiction, the question of jurisdiction is judicially decided, and the judgment record is conclusive evidence of jurisdiction until set aside or reversed in a direct proceeding, and may not be otherwise attacked collaterally.").

■ At that April 15, 1999, proceeding, after hearing evidence of the measures taken by N.L.R.B. to effect service upon Mr. Gordon, the ALJ concluded that "Mr. Gordon was given sufficient notice of and opportunity to appear and participate in the remand hearing and to present whatever defense he felt was appropriate, either in person or through counsel or other representative in fully and fairly litigating the matters described in the Board's remand order." Thus evidence was taken at that proceeding and a judicial determination was made that Gordon received legally sufficient notice of the hearing. Because evidence was taken and a judicial determination was made on the merits of the notice issue, this Court has no authority to entertain Mr. Gordon's invitation to now look behind that proceeding on collateral attack and second-guess the prior decision with respect to his allegations of improper notice.

The ALJ hearing held on April 15, 1999, resulted in the fifth of nine orders which were entered in this matter. The Sixth Ruling, which was the N.L.R.B. adoption of the ALJ's findings, and the Seventh Ruling, which was the Tenth Circuit's enforcement order, flowed directly from that April 15, 1999, hearing. No new evidence was taken.

Assuming the absolute accuracy of Gordon's descriptions of events in his affidavit, at minimum, he received correspondence from N.L.R.B. which put him on notice of events taking place in this ongoing matter to which a prudent person would pay some attention. Gordon describes no action whatever which he may have taken to so much as inquire into the matter. If, as Gordon claims, he never actually laid eyes on the Fifth, Sixth and Seventh Rulings, it is not for lack of effort on the part of N.L.R.B. and Gordon must bear the responsibility for that failure.

In order to set the actual amounts of back pay due, the N.L.R.B. issued an amended compliance specification and notice of hearing. The November 23, 2001, Board ruling (the Eighth Ruling) is the product of that process. In that ruling, the board describes in detail its efforts to inform Gordon of that proceeding. The Board found that Gordon had received legally sufficient notice of the filing requirements and had failed to respond. Consequently, it granted the General Counsel's request for summary judgment with respect to back pay amounts stated in the amended compliance specification. From the description of those efforts contained in the November 23, 2001, ruling, this Court sees no infirmity in the notice given to Gordon and, in fact, perceives merely a continuation of the same pattern of inaction engaged in by Gordon from the time that he discharged his counsel. The ninth and final ruling in the series is the Tenth Circuit's order dated April 3, 2002, enforcing the Board's November 23, 2001, ruling.

From the description of Gordon's actions, or lack thereof, which he provides in his affidavit; from Gordon's description of his total lack of understanding of the significance and import of the orders which he does acknowledge seeing; and from findings, particularly in the Fifth and Eighth Rulings, concerning the Board's efforts at informing Gordon of the hearings that were held in this matter, this Court must conclude that the Tenth Circuit ruling of April 3, 2002, is a valid and final judgment fixing Gordon's liability. Gordon has provided no evidence calling into question the regularity of the proceedings which led to that final judgment. His own statements from his affidavit, in combination with the findings of fact contained in rulings leading up to that final judgment, make it evident that Gordon was aware that proceedings were taking place in this matter. He clearly misunderstood the posture of the case and did not realize that a significant judgment for personal liability could still be entered against him upon remand of the matter back to the ALJ after the Third Ruling, which was rendered by the Tenth Circuit in 1998. He uses that fact to excuse his evident lack of interest in proceedings which he knew were continuing against him. But that falls very short of providing a legally sufficient basis for a collateral attack on the valid and final Tenth Circuit Judgment.

Gordon also claims that the Judgment was obtained through extrinsic fraud and is, therefore, void,

A party to a judgment or those in privity with him may impeach such judgment in a collateral proceeding for inceptional or jurisdictional fraud, that is, fraud which goes to the very jurisdiction of the court and prevents it from obtaining the requisite power or jurisdiction to

entertain or decide the issues in controversy.

Equitable relief from a judgment may be obtained on the ground of extrinsic or collateral fraud. Fraud is regarded as extrinsic or collateral where it prevents a party from having a trial or from presenting his cause of action or his defense, or induces him to withdraw a defense, or operates upon matters pertaining not to the judgment itself, but to the manner in which it was procured. *Chisholm v. House*, 160 F.2d 632, 643 (10th Cir.1947). The Court has reviewed Gordon's arguments. He complains, *inter alia*, that N.L.R.B. failed to comply with its own service requirements; that N.L.R.B. failed to comply with its own time limits for setting hearings and amending complaints; and that N.L.R.B.'s complaint against Gordon was time-barred.

Those allegations, even if true, do not state a claim of fraud engaged in by N.L.R.B. upon which Gordon relied and which prevented him from having his day in court. Gordon received the Third Ruling entered by the Tenth Circuit and the Fourth Ruling remanding the matter to the ALJ for further proceedings. In the Fifth Ruling, the ALJ made detailed findings, based upon evidence and live testimony presented at the remand hearing, and found that Gordon had notice of that proceeding. Because it is established that Gordon had notice of the remand proceeding, it follows that he had an opportunity to appear and raise the statute of limitations and procedural issues that he wishes to raise in this matter. Far from drawing the Court's attention to any misrepresentation by the N.L.R.B. calculated to prevent Gordon from presenting his defenses, Gordon's affidavit makes it clear that the primary reason that he failed to participate in those hearings subsequent to the Third Ruling is his incorrect belief that the Third Ruling had absolved him of any possibility of personal liability. Gordon has given the Court no evidence, nor has he made credible allegations of extrinsic fraud, that would justify this Court in questioning the validity of the Judgment.

### 2. *Gordon Received a Full and Fair Opportunity to Litigate the Prior Action*

This is not a case where the Court can say that the Defendant actively litigated the Prior Action to the bitter end. Gordon does not dispute that he litigated the matter through the Third Ruling which resulted from the first proceeding before the Tenth Circuit. After that, however, he took no part in any of the remaining proceedings and the final Judgment was entered in his absence.

The general rule is that federal court default judgments have no collateral estoppel effect, because none of the issues is actually litigated. *Arizona v. California*, 530 U.S. 392, 414, 120 S.Ct. 2304, 2319, 147 L.Ed.2d 374 (2000). However, the usual default judgment is one where a defendant fails to answer or plead and judgment is entered with a total lack of participation from the defendant. *See*, FED. R. CIV. P. 55.

It is commonplace that a "default judgment" will be entered against a litigant as a sanction for failure to cooperate with discovery orders. *See* FED R. CIV. P. 37(b)(2)(C); *Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 349–53, 29 S.Ct. 370, 379–81, 53 L.Ed. 530 (1909); *F.D.I.C. v. Daily*, 973 F.2d 1525 (10th Cir.1992). A default judgment issued under those circumstances is entitled to be given preclusive effect under the doctrine of collateral estoppel. *See, e.g., Pahlavi v. Ansari (in re Ansari)*, 113 F.3d 17 (4th Cir.1997); *Wolstein v. Docteroff (In re Docteroff)*, 133 F.3d 210 (3rd Cir.1997); *Bush v. Balfour*

*Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319 (11th Cir.1995); *McCart v. Jordana (In re Jordana)*, 232 B.R. 469 (10th Cir. BAP 1999).

Those cases represent a type of default judgment where the Defendant has appeared and answered but, due to the failure of the Defendant to comply with the required discovery procedures of the litigation, he suffers an adverse judgment without the court having been afforded an opportunity to have a full presentation of evidence from the parties. Nonetheless, for purposes of collateral estoppel, the defendants are deemed to have been afforded a full and fair opportunity to litigate the merits of the controversy.

██ The same is true in the present case. Gordon was afforded a full and fair opportunity to litigate the merits of the case. He did, in fact, vigorously litigate the case in the proceedings which resulted in the first three rulings. Furthermore, despite Gordon's lack of participation in the later proceedings, the resulting rulings were not entered by default. It is evident that the ALJ considered the evidence presented by Gordon in prior proceedings along with the newly presented evidence when he handed down the Fifth Ruling. Moreover, the Eight Ruling, made by N.L.R.B., was made upon a summary judgment motion. It is evident from that ruling that N.L.R.B. considered the record before it and did not simply enter a judgment by default for lack of Gordon's appearance. It has been held that a judgment entered on an unopposed summary judgment motion is entitled to preclusive effect. *U.S. v. Gottheiner*, 703 F.2d 1136, 1140 (9th Cir.1983).

Thus, the Court finds that Gordon did receive a full and fair opportunity to litigate the merits of the controversy that resulted in the Judgment.

### 3. The Issue Previously Decided Is Not Identical with the One Presented in the Present Action

██ In this adversary action, N.L.R.B. proceeds under § 523(a)(6) which provides that a debt "for willful and malicious injury by a debtor to another entity or the property of another entity" is not subject to discharge. 11 U.S.C. § 523(a)(6). Thus, the issue that the Court must decide in the present action is whether Gordon inflicted willful and malicious injury upon the parties represented by the N.L.R.B. In the context of this motion and application of collateral estoppel, it is necessary for this Court to find that the decision in the Prior Action necessarily decided the question of whether Gordon's debt to the workers represented by N.L.R.B. is the result of his willful and malicious injury to those workers. In other words, does a "deliberate and willful" intent to terminate union workers and to defeat the NLRA equate to a "willful and malicious injury" to creditors? Gordon argues that, because the § 523(a)(6) "willful and malicious" standard was not utilized in the Prior Action, no § 523(a)(6) issues were "actually litigated" and the issue for decision by the Court is not identical to the issue decided in the Prior Action.

In the 1998 Supreme Court case of *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), the Court noted that there was a split of authority among the circuits with respect to the proper standard to be used to determine what qualifies as a willful and malicious injury. The Eighth Circuit had held that a medical malpractice judgment entered against the debtor (Dr. Geiger) and in favor of Ms. Kawaauhau was dischargeable. The specific question that the Supreme Court addressed is whether the definition of willful and malicious embraces an intentional act which causes injury. The

Court found that definition to be too attenuated. It held that § 523(a)(6) requires a "deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Id.* at 977 (emphasis in original).

Unfortunately, since *Kawaauhau* was decided, there seems to be some confusion among the circuits as to how to interpret *Kawaauhau's* stated standard. One school of thought interprets intentional injury to include either an *objective* certainty that injury will result from the debtor's intentional act or a *subjective* intent that the act will cause injury. *See, e.g., Miller v. J.D. Abrams, Inc.*, 156 F.3d 598, 603 (5th Cir.1998) ("[E]ither objective substantial certainty or subjective motive meets the Supreme Court's definition."). The other view rejects any objective criteria. According to those cases, "the willful injury requirement of § 523(a)(6) is met when it is shown either that the debtor had a subjective motive to inflict the injury or that the debtor believed that injury was substantially certain to occur as a result of his conduct." *See, e.g., Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1144 (9th Cir.2002) (quoting *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1208 (9th Cir.2001)).[2]

The Tenth Circuit has not spoken to that distinction in any published opinion. It did, however, directly address it in an unpublished opinion. There the Tenth Circuit soundly rejected the notion that a finding of objective substantial certainty that an act will cause injury is the equivalent of the debtor's intent to cause injury. In *Via Christi Regional Medical Ctr. v. Englehart (In re Englehart)*, 229 F.3d 1163, 2000 WL 1275614 (10th Cir.2000) (unpublished disposition), the court observed that "the 'willful and malicious injury' exception to dischargeability in § 523(a)(6) *turns on the state of mind of the debtor,* who must have wished to cause injury or at least believed it was substantially certain to occur." *Id.* at *3 (empha-

---

2. This Court believes that discussions of this perceived confusion do not take into account the difference between the evidentiary facts that the Court receives through direct proof and the ultimate facts that the Court is permitted to infer from that evidence. *Kawaauhau* stands for the proposition that pursuant to § 532(a)(6) a court is required to find, as an ultimate fact, that the Debtor intended to inflict injury to the creditors' person or property. In its role as finder of fact, it is part of the Court's duty to use evidentiary facts presented to it, together with permissible inferences, to draw its conclusions with respect to ultimate facts. *Walker v. U.S. Gypsum Co.*, 270 F.2d 857, 862 (4th Cir.1959) ("Evidentiary facts, though undisputed, do not always conclusively establish the ultimate fact at issue. When the ultimate fact is to be inferred from evidentiary facts, the choice between permissible inferences is for the trier of facts."). A court will rarely, if ever, have before it direct evidence of an individual's intent. Consequently, it is not only permissible, but necessary, to divine intent from indirect evidence. *See Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1287 (8th Cir. 1987) ("Because direct proof of intent ... is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred."); *Shields v. Miera (In re Miera)*, 104 B.R. 989, 997 (Bankr.D.Minn.1989) ("Direct evidence of intent is rarely available. In the absence of ... an admission as to intent, the fact-finder inevitably is relegated to making inferences on the ultimate issue, from the basis of circumstantial evidence.") When the Court is presented with proof of an intentional act by a debtor and proof that the act perpetrated by the debtor was certain to cause injury, the Court believes that it is absolutely permissible to infer the ultimate fact of actual intent to cause injury from those evidentiary facts. *See Nahman v. Jacks (In re Jacks)*, 266 B.R. 728, 743 (9th Cir. BAP 2001) ("[O]bjective substantial certainty of harm is one factor to be considered in determining whether [Defendant] intended to injure [Plaintiff], or believed that injury was substantially certain to occur as the result of his conduct."). Depending upon the nature of the act committed and other facts in evidence, to do otherwise may well fly in the face of reason and logic.

sis added). The same standard was used by the Tenth Circuit Bankruptcy Appellate Panel in *Mitsubishi Motors Credit of America, Inc. v. Longley (In re Longley)*, 235 B.R. 651 (10th Cir. BAP 1999), where the court also focused on the debtor's subjective intent. That court stated "[w]illful injury may be established by direct evidence of specific intent to harm a creditor or the creditor's property. Willful injury may also be established indirectly by evidence of both the debtor's knowledge of the creditor's ... rights and the debtor's knowledge that the conduct will cause particularized injury." *Id.* at 657.

It is clear from the factual findings in the Prior Action that Gordon closed down his union shop and discharged his union workers. The Prior Action also conclusively established that Gordon intended to convert his business operations from a unionized operation to a non-unionized operation. This Court's task, therefore, is to determine whether or not the Prior Action necessarily decided that Gordon intended to injure his union workers or he subjectively knew that his actions were substantially certain to cause injury to the union workers.

The ultimate conclusion in the Prior Action was that Gordon, as alter ego of several employer entities, was responsible for unfair labor practices committed by those entities which violated § 8(a) of the National Labor Relations Act. 29 U.S.C. § 158(a). This Court's review of § 8(a) of the NLRA discloses no intent requirement to a finding that an employer has committed unfair labor practices under the NLRA. Consequently, the fact that liability was assessed against Gordon does not compel any conclusion with respect to Gordon's subjective intent in committing those violations.

But that does not end the Court's inquiry. If the ALJ made specific findings of fact with respect to Gordon's intent as to the employees themselves, then under the doctrine of collateral estoppel, those findings are binding upon this Court. But no such factual findings appear in any of the nine rulings. Consequently, this Court cannot grant the N.L.R.B. Motion for Summary Judgment because the record before the Court is inadequate to conclude that the issue of Gordon's specific intent to injure his employees was actually decided in the Prior Action.

The Court notes that other courts have used collateral estoppel to find an N.L.R.B. unfair labor practices judgment to be nondischargeable as a willful and malicious injury. In *In re Fogerty*, 204 B.R. 956 (Bankr.N.D.Ill.1996), the N.L.R.B. sought to except a debt from discharge under § 523(a)(6) after obtaining a judgment in an administrative proceeding against the debtor for violating the NLRA. The bankruptcy court granted summary judgment to the N.L.R.B., finding that the determinations made in the prior action were sufficient bases to conclude that the debtor had willfully and maliciously injured creditors under § 523(a)(6). There, it had been determined in the prior action that the debtor had willfully and intentionally threatened employees with termination for engaging in union activities and had terminated two employees for union activities (one who protested the employer's failure to apply a union contract provision and another who had merely associated with the first). The bankruptcy court noted that it was the debtor's intent to discourage and to stop employees from exercising their rights to engage in "protected, concerted activity." However, *Fogerty* was decided pre *Kawaauhau*. That court stated the legal standard that it used as: "An act is 'willful' if it is 'deliberate or intentional' and is 'malicious' if it is either wrongful and with-

out just cause or excuse or committed in the face of knowledge that harm to the injured party will necessarily result, *even in the absence of personal ill will or a specific intent to injure.*" *Id.* at 962 (emphasis added). *Kawaauhau* requires a finding of intent to injure the creditor, *Kawaauhau*, 523 U.S. at 61, 118 S.Ct. at 977. *Fogerty*, therefore, cannot stand as good authority after *Kawaauhau*, because an act which is wrongful and without just cause or excuse does not rise to the level of *Kawaauhau's* intentional injury standard.

*In re Piper*, 2002 WL 1369050 (Bankr. E.D.Mich.2002), another decision that is also very factually similar, followed *Fogerty*. Again, the court did not hesitate in applying collateral estoppel to grant summary judgment in favor of the N.L.R.B. The bankruptcy court in *Piper* relied on the determination made in the administrative action that the debtor intentionally terminated employees for union activities.

By contrast to *Fogerty*, *Piper* post-dates *Kawaauhau*. The *Piper* court discusses the requirement in the Sixth Circuit that it must, at minimum, find that the debtor knew of the creditor's rights and *subjectively* knew that his actions would cause injury to those rights. The court also discussed the N.L.R.B. findings that

> [i]n the underlying Board proceeding, the Debtor/Defendant was found to have violated Sections 8(a)(1) and (5) of the Act because he discriminatorily discharged employees whom he knew were engaged in concerted protected activity that included support for a union and because he engaged in an open hostile campaign against those employees that supported the union including discharging those employees and refusing to pay contractually required wages and fringe benefits. The administrative law judge found that by the Debtor/Defendant's

conduct he had created 'a negative atmosphere' and 'intolerable working conditions.'

*Id.* at *2. Based upon the above N.L.R.B. findings, and using a legal standard identical to the standard dictated by the Tenth Circuit cases, the *Piper* court found the debt at issue to be nondischargeable.

*In re Branoff*, 2000 WL 1701366, 165 LRRM 2757 (Bankr.E.D.Mich.2000), is also a post-*Kawaauhau* case. It was decided in a bankruptcy court in the Sixth Circuit which adheres to the same legal standard for § 523(a)(6) cases as that adopted by the Tenth Circuit. *See, In re Englehart*, 229 F.3d 1163, 2000 WL 1275614 at *2 (citing *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 465 n. 10 (6th Cir.1999)). There, the bankruptcy court also granted summary judgment to the N.L.R.B. The opinion sets forth in detail the factual findings of the prior action, focusing on the debtor's threats and harassment of employees over potential interest in unionizing, and the debtor's actions in closing one business and opening another to evade potential union obligations. With minimal analysis of the equivalency of a § 523(a)(6) claim to these facts, the court granted summary judgment.

In all three cases, *Fogerty, Piper* and *Branoff*, judgments based on N.L.R.B. proceedings found that the employers had violated § 8(a) of the NLRA. All three applied collateral estoppel to find that such a judgment was adequate to satisfy the requirements of 11 U.S.C. § 523(a)(6). The legal standard used in *Fogerty* was not consistent with the standard subsequently set forth in *Kawaauhau*. However, both *Piper* and *Branoff* are post-*Kawaauhau* cases and are decided by bankruptcy courts in federal circuits which have adopted post-*Kawaauhau*

standards identical to that used in the Tenth Circuit.

This Court cannot determine, from its review of the discussions which appear in *Piper* and in *Branoff*, that those cases stand for the proposition that a judgment which finds a violation of § 8(a) of the NLRA is, in and of itself, sufficient to support a finding of the employer's intent to injure the employees. To the contrary, the Court's review of § 8(a) of the NLRA, as stated above, fails to find any requirement in the statute that a court must find the employer possessed a specific intent to harm its employees to be liable. Consequently, because those cases were decided in jurisdictions that focus on the debtors' subjective intent to injure under § 523(a)(6) and because no such subjective intent to injure is required to find a violation under § 8(a) of the NLRA, the Court concludes that those courts' holdings must rest upon the specific facts of those cases and that they do not apply beyond those facts. Thus, while they provide some guidance to this Court in the present case, they do not dictate the result.

4. *Even Though Summary Judgment Cannot be Granted on the Basis of Collateral Estoppel, the Scope of Trial is Significantly Narrowed by Issues That Were Conclusively Decided in the Prior Action*

The Court has found that it cannot grant summary judgment based on the application of collateral estoppel to the Judgment rendered in the Prior Action. Nonetheless, the Court does find that the Judgment is entitled to collateral estoppel effect and does foreclose relitigation of a number of issues. In fact, the only issue that remains to be tried is whether or not Gordon's actions, as established in the Prior Action, were done with legal intent to cause injury to the persons or property of his former workers. The fact that Gordon committed unfair labor practices under § 8(a) of the NLRA; the fact that his employees were injured by those unfair labor practices; and the amount of damages suffered by those employees have been conclusively decided. The fact that Gordon intentionally discharged his union workers and that he did so in order to convert his business from a union operation to a non-union operation has been decided. Thus, all of the elements of N.L.R.B.'s cause of action under § 523(a)(6) have been established except for the issue of Gordon's intent. If the evidence presented at trial persuades the Court either: 1) that Gordon desired to injure his union workers; or 2) that Gordon subjectively knew discharging those workers would cause them injury, then N.L.R.B. will have carried its burden of proof as to willful and malicious injury under 11 U.S.C. § 523(a)(6). *See In re Englehart*, 229 F.3d 1163, 2000 WL 1275614 at *3; *In re Longley*, 235 B.R. at 657.

### III. *Conclusion*

In accordance with the foregoing discussion, the Court finds that the Judgment rendered in the Prior Action is a valid and final judgment which is entitled to preclusive effect as to legal and factual issues which were decided in those proceedings. The Court finds that there is a disputed factual issue as to whether the economic injury suffered by the former employee's of Debtor's business entities was intentionally inflicted and that, consequently, summary judgment must be denied. Nonetheless, the facts regarding Debtor's actions and the harm caused to former employees has been conclusively determined in the Prior Action so that trial of this matter will

only address the factual issue of Debtor's intent with respect to the employees. Therefore, it is

**ORDERED** that Plaintiff's Motion for Summary Judgment is hereby DENIED. The Court will set a FED. R. BANKR. P. 7016 status and scheduling conference by separate order.

## APPENDIX

| | Date | Ruling Rendered By: | Type of Ruling/Result |
|---|---|---|---|
| First Ruling | May 9, 1995 | ALJ | Decision |
| Second Ruling | August 27, 1996 | N.L.R.B. | Decision and Order. Adopts ALJ Decision |
| Third Ruling | May 18, 1998 | 10th Cir. | Order and Judgment. Enforces in part and denies enforcement in part. Remands for further proceedings |
| Fourth Ruling | February 12, 1999 | N.L.R.B. | N.L.R.B. orders remand back to ALJ |
| Fifth Ruling | July 9, 1999 | ALJ | Supplemental Decision. Recommends that the Second Ruling be sustained |
| Sixth Ruling | August 25, 1999 | N.L.R.B. | Supplemental Order. Adopts the ALJ Supplemental Decision |
| Seventh Ruling | April 10, 2000 | 10th Cir. | Supplemental Judgment Enforcing an Order of the National Labor Relations Board. Enforces the N.L.R.B. Supplemental Order |
| Eighth Ruling | November 23, 2001 | N.L.R.B. | Supplemental Decision and Order. Fixes amount due to Gordon's former employees. |
| Ninth Ruling | April 3, 2002 | 10th Cir. | Second Supplemental Judgment Enforcing a Supplemental Order of the National Labor Relations Board. Enforces N.L.R.B. order fixing amounts due to Gordon's former employees. |